365 So.2d 497 (1978)
ROLLINS ENVIRONMENTAL SERVICES OF LOUISIANA, INC., Plaintiff-Appellant,
v.
IBERVILLE PARISH POLICE JURY, Defendant-Appellee.
No. 12392.
Court of Appeal of Louisiana, First Circuit.
October 31, 1978.
Wallace A. Hunter and William Faller of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for plaintiff-appellant-Rollins Environmental Services of Louisiana, Inc.
Houston C. Gascon, III, Plaquemine, for defendant-appellee-Iberville Parish Police Jury.
Patrick W. Pendley of Freeman & Pendley, Ltd., Plaquemine, by amicus curiae.
*498 En Banc.
SARTAIN, Judge.
Rollins Environmental Services of Louisiana, Inc. (Rollins) appeals from a judgment of the district court upholding the constitutionality of an ordinance of the Police Jury of Iberville Parish (Police Jury) which prohibited, inter alia, the disposal of hazardous waste within the borders of the parish. We reverse.
The issue presented in this litigation is solely one of law as the facts are not in dispute.
In 1975, the Police Jury adopted an ordinance for the purpose of establishing a comprehensive solid waste management program which pertained to the storage, collection, transportation, processing and disposal of all such wastes in the unincorporated areas of the parish. "HAZARDOUS WASTE" as therein defined, was specifically excluded from its provisions.
On August 3, 1978, the Police Jury amended the original ordinance to provide, in pertinent part, as follows:
"Section IXIHazardous Waste Disposal
A. No person, firm, corporation, or other commercial establishment shall cause, suffer, allow, or permit any `HAZARDOUS WASTE' as defined in Section 2, subsection 7 of the Comprehensive Solid Waste Management Porgram (sic) of the Parish of Iberville, or any other land contaminants to be dumped, discharged, stored, injected, or otherwise disposed of, within the boundaries of the Parish of Iberville, Louisiana, or any land within the confines of said parish."
The amending ordinance further imposed a fine of $10,000.00 per day for any violation thereof with "each day constituting a new violation."
There existed in Iberville Parish on and for some time prior to August 3, 1978, a deep well disposal facility known as "Schwing B-1." Such a facility is designed to dispose of liquid industrial residue by injecting it into the surface of the earth. It is drilled and operated under a permit issued by the Louisiana Department of Conservation (Department) and, more particularly, in accordance with the provisions of Statewide Order No. 29-N as promulgated by the Department.
The record before us does not disclose when "Schwing B-1" was actually drilled. However, the well was initially operated under a permit issued by the Department to a corporation known as Clean Land Air Water Corporation (CLAW). Under date of June 14, 1978, CLAW entered into an agreement to sell to Rollins "Schwing B-1", the twenty acres upon which it was located, and certain other items of equipment used in its operation. On July 18, 1978, the Department approved the transfer of CLAW's permit to Rollins. The sale of the aforementioned assets was consummated on July 28, 1978.
Between the dates of Rollins' agreement to purchase and the actual closing of the sale from CLAW, an unfortunate event occurred in Iberville Parish. A young man died as a result of inhalation of or contact with toxic material at an open and unlicensed waste disposal site located some five to six miles from the "Schwing B-1" deep well. This tragedy hastened the adoption of the contested amendment to the ordinance. Other than the natural concern and apprehension that surrounds the disposal of hazardous waste, the only relationship of that tragedy to the instant controversy is that CLAW was the operator or co-operator of the pit where the event occurred.
Following the adoption of the amending ordinance on August 14, 1978, various representatives of industrial plants located in Iberville Parish, including Rollins, were invited to a meeting conducted by the Police Jury. They were informed that the penal provisions of the ordinance would be strictly enforced. This warning included the injection *499 of hazardous waste into "Schwing B-1."[1]
Confronted with the threat of prosecution, Rollins brought the instant suit wherein it sought a preliminary injunction against the appropriate authorities from enforcing the ordinance and a declaratory judgment seeking to have the amendment of August 3, 1978, declared violative of the Louisiana Constitution of 1974. At the hearing on the preliminary injunction all counsel stipulated that the evidence then brought forward would also be submitted on the merits of the main demand for declaratory relief. At the conclusion of the hearing, the matter was submitted. Subsequently, the trial judge, for oral reasons assigned, denied the injunction, upheld the validity of the amending ordinance and dismissed Rollins' suit. On the latter's appeal, we granted a special hearing for en banc consideration.[2]
The Police Jury contends that the amendment to its 1975 ordinance is permitted under the authority granted to it by R.S. 33:1236(31), below, or in the absence of specific authority, under its inherent power to enact such ordinances as are necessary in the interest and for the protection of its citizens.
On the other hand, Rollins argues here as it did in the trial court that R.S. 33:1236(31), below, is not authority for the Police Jury's action. To the contrary, it contends that the state has not delegated its authority in this area but has enacted specific legislation to control the same, i. e., the disposal of hazardous waste by deep injection wells.
We agree with the position taken by Rollins and must reject the argument advanced by the Police Jury.
As evidenced by a consistent line of cases, our jurisprudence is uniform to the effect that police juries are creatures and subordinate political subdivisions of the state. As such they possess only those powers as are conferred upon them by the constitution and laws of the state. Union Sulphur Co. v. Parish of Calcasieu, 153 La. 857, 96 So. 787 (1923); KAOK-CATV, Inc. v. Louisiana Cable T.V., Inc., 195 So.2d 297 (La.App. 3d Cir. 1967); Washington Parish Police Jury v. Washington Parish Hospital Service District No. 1, 152 So.2d 362 (La. App. 1st Cir. 1963); B.W.S. Corporation v. Evangeline Parish Police Jury, 293 So.2d 233 (La.App. 3d Cir. 1974).
The above authorities are in harmony with Art. 6, § 7 of the Louisiana Constitution of 1974, which reads as follows:
"§ 7. Powers of Other Local Governmental Subdivisions
Section 7. (A) Powers and Functions. Subject to and not inconsistent with this constitution, the governing authority of a local governmental subdivision which has no home rule charter or plan of government may exercise any power and perform any function necessary, requisite, or proper for the management of its affairs, not denied by its charter or by general law, if a majority of the electors voting in an election held for that purpose vote in favor of the proposition that the governing authority may exercise such general powers. Otherwise, the local governmental subdivision shall have the powers authorized by this constitution or by law."
The Police Jury does not contend that there are any other applicable constitutional provisions or that it enjoys home rule status. Consequently, we look to the statutes.
R.S. 33:1236 enumerates many of the powers delegated to the police juries by the legislature. The delegated powers dealing with the disposal of waste material are those contained in Subsection 31, which reads as follows:
"To enact ordinances to require, prohibit, or regulate the destruction, disposal, or burning of trash, garbage, leaves, limbs and branches, or debris of any kind and *500 to regulate dumping and the use of borrow pits for sanitary fill." (Emphasis ours)
It is the Police Jury's contention that "debris of any kind" encompasses hazardous waste as defined in its ordinance. A similar argument was made in B.W.S. Corporation v. Evangeline Parish Police Jury, above, in reference to an ordinance prohibiting the disposal of chemical waste. There the court said: 293 So.2d 233, 236:
"It is a fundamental principle in the construction of statutes that the meaning of a word or phrase may be ascertained by the meaning of other words or phrases with which it is associated. Under the doctrine of noscitura sociis and ejusdem generis general words, such as `other, etc.', following an enumeration of particular or specific classes or things are to take color from the specific, so that the general words are restricted to a sense analogous to the less general. Thus the general words should be applied only to such classes of things of the same general kind as those specifically mentioned. (Citations omitted.)
We are also constrained to give the words used in the statute their ordinary and usual signification. Venterella v. Pace, 180 So.2d 240 (La.App. 4th Cir. 1965). The meaning of a particular word, clause, or sentence must also be determined in light of the statute as a whole, each being construed with respect to and in light of all other provisions to the ends that the whole be construed in harmony with the purposes and objects thereof as announced therein. (Citation omitted.)
In light of these general rules of construction and the specific wording found in Section 31 we can come to no other conclusion but that `debris of any kind' was not contemplated by the Legislature in its adoption of the statute to include industrial waste."
Applying the same rules and statutory interpretation, we similarly conclude that the hazardous waste attempted to be regulated by the Iberville ordinance is not covered by the term "debris of any kind."
Additional support for this interpretation is found in R.S. 33:1236.6. This statute gives five parishes, Iberville not being included among them, authority concurrent with designated state agencies to regulate the disposal of industrial waste. If such wastes were within the contemplation of R.S. 33:1236(31), above, then this special grant of power would have been unnecessary. Hazardous waste, as defined in the Iberville ordinance, is not necessarily industrial waste; but, it can not be questioned that the amending ordinance also includes industrial waste and, at least to that extent, exceeds the scope of R.S. 33:1236(31), above.
The "inherent authority" theory advanced by the Police Jury must also be rejected. While there might exist a certain set of circumstances which, in the absence of any state action, might justify or dictate local action, such is not the case in the matter before us. The action of the Police Jury in its adoption of the amending ordinance not only invades an area into which the state has previously moved, it also purports to transcend the latter's efforts.
A perusal of legislative action at the state level in the area of industrial waste management reveals that in 1976 (Act # 122) the legislature vested in the Department of Conservation (now the Department of Natural Resources) the authority to issue permits for and to regulate disposal wells and mandated the Commissioner to promulgate appropriate rules and regulations. R.S. 30:1(D) and 4(C)(16). Statewide order # 29-N was issued under this authority. Then by Act # 334 of 1978, the legislature adopted a comprehensive state hazardous waste control program. These provisions are now part of R.S. 30:1101, et seq. The latter statute became effective on July 10, 1978, when it was approved by the Governor. All of these statutes were enacted prior to the adoption of the Iberville ordinance in August of 1978.
It is settled law that a subordinate political subdivision of the state cannot enact ordinances which infringe upon the spirit of state law or are repugnant to the general policy of the state. City of Minden v. David Bros. Drug Company, 195 La. 791, *501 197 So. 505 (1940); National Food Stores of Louisiana, Inc. v. Cefalu, 280 So.2d 903 (La. 1973); State v. Sissons, 292 So.2d 523 (La. 1974); Ozone Import Company, Inc. v. Millet, 329 So.2d 476 (La.App. 4th Cir. 1976). The amending ordinance here contested goes even further. It completely abrogates positive state law on the same subject matter.
Finally, we must note that the Police Jury contends that its ordinance is necessary because present state law is inadequate to prevent the "wholesale and indiscriminate dumping of hazardous waste" throughout its parish. This is really not the issue before us. We are not here dealing with the wholesale and indiscriminate dumping of waste material. We are dealing with the operation of a duly licensed deep well injection disposal facility.
The provisions of the original comprehensive solid waste management ordinance of 1975 are not contested.
For the above reasons, the judgment of the district court is reversed and judgment is rendered herein decreeing the amending ordinance of August 3, 1978, of the Police Jury of Iberville Parish unconstitutional, null and without legal effect.
All such costs as are permitted by law are assessed against the defendant-appellee.
REVERSED AND RENDERED.
NOTES
[1] It is agreed by the litigants that the material sought to be injected into the well is hazardous within the definition of the ordinance.
[2] J. Cleveland Fruge, J., participated on special assignment in the absence of Edwards, J.