United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 15, 2004**

Charles R. Fulbruge III
Clerk

Revised October 15, 2004

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 03-30677

_____

ENERGY MANAGEMENT CORP.; TELLUS OPERATING GROUP, LLC,

Plaintiffs - Appellants,

v.

CITY OF SHREVEPORT,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana, Shreveport Division

Before DAVIS, EMILIO M. GARZA, and PRADO, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this diversity suit, Energy Management Corporation ("EMC"), a Mississippi corporation that owns state granted mineral interests under and around Cross Lake, challenges the validity of City of Shreveport Ordinance 221 which prevents EMC from drilling within 1,000 feet of the lake. The district court dismissed EMC's takings claim as time barred. It also found that Ordinance 221 was not barred by the mineral reservation in favor of the state in the deed conveying the lake to the city or by state regulation of oil and gas drilling in Louisiana. We agree that EMC's takings claim is prescribed but find that Ordinance 221 is preempted by Louisiana's comprehensive regulation of oil and gas drilling. Accordingly, we affirm the dismissal of the

takings claim but reverse and remand the remainder of the case for entry of declaratory judgment in favor of EMC.

I.

Cross Lake is located just outside of Shreveport, Louisiana, and is the main source of water for the city. In Act 31 of 1910, the Louisiana legislature authorized the transfer of Cross Lake to the City of Shreveport. *See* 1910 La. Acts. 31. In 1914, the Secretary of State conveyed "all that portion of land belonging to the State of Louisiana in what is known as the bed of Cross Lake" to Shreveport to "provide a water supply" to the city. The deed explicitly reserved to the state "all minerals or mineral rights to and under said land, with a full and unrestricted right to the state, through its officers, agents or agencies, to enter thereon, and bore for oil, gas or any other mineral." It further reserved the right to "drill and operate any well . . . and also such other privileges as are reasonably requisite for the conduct of said operations, and the removal of any mineral."

The act authorizing the transfer of the lake to Shreveport granted the city "full and plenary power over said lake" for the purpose of "the protection and conservation of [the city's] water supply." The state made a similar grant of authority in 1926 and extended the geographic scope of that authority to the land immediately surrounding the lake up to 5,000 feet, *see* 1926 La. Acts. 39 ("The City of Shreveport is hereby granted full power and authority to adopt and enforce all needful police and sanitary ordinances and regulations for the protection of the bed and waters of Cross Lake . . . from pollution and contamination from any source and is likewise granted similar power and control over the area surrounding said lake for a distance of five thousand feet . . . ."), and in 1990 reiterated its grant of this authority, *see* 1990 La. Acts 145.

2

In 1978, pursuant to authority granted under the 1974 Louisiana Constitution, Shreveport adopted an updated home rule charter.[1] Section 2.03(v) of the charter provides that Shreveport shall have the power "[t]o make all necessary regulations to protect the water supply of the City from pollution and other damage, and to exercise full and unlimited police power over the bed and waters of Cross Lake and for a distance of five thousand feet from the meander contour line. . . and to pass any and all rules, regulations and ordinances deemed to be necessary for these purposes . . . ." This grant of authority in Shreveport's home rule charter mirrors the grant of authority by the state in Act 39 of 1926.

In 1990, citing its authority to adopt ordinances designed to protect its water supply under both its home rule charter and state law, Shreveport adopted Ordinance 221. Ordinance 221 claims to be an "overall legislative scheme to regulate hazardous activities, including but not limited to oil and gas exploration and production, that do or may pose a threat to the safety of the City's water supply." The ordinance forbids any new drilling within 1,000 feet of Cross Lake. It further sets up a comprehensive regulatory scheme governing all new drilling between 1,000 and 5,000 feet of Cross Lake.

In 1959, Louisiana created the Louisiana Office of Conservation ("LOC"). The LOC has the exclusive authority to grant or deny permits to drill and mine in the State of Louisiana. Louisiana law specifically precludes local governments from interfering with decisions made by the LOC regarding drilling and mining. *See* La. R.S. 30:28(F). The statute provides that "[t]he issuance of the permit by the commissioner of conservation shall be sufficient authorization to the

---

[1] The 1978 charter replaced the 1950 charter which was enacted pursuant to the previous constitution. Each charter granted the city the exact same legislative authority over Cross Lake.

holder of the permit to enter upon the property covered by the permit and to drill in search of minerals thereon. No other agency or political subdivision of the state shall have the authority, and they are hereby expressly forbidden, to prohibit or in any way interfere with the drilling of a well or test well in search of minerals by the holder of such a permit." *Id.*

In the years following the conveyance of Cross Lake to the City of Shreveport, Louisiana has granted both numerous leases of its mineral interests under Cross Lake and permits authorizing drilling pursuant to those leases. EMC acquired several mineral leases granted by the state to drill and mine under and around Cross Lake. EMC obtained a permit from the LOC to drill on a location within 1,000 feet of Cross Lake for the purpose of exploiting its mineral leases. Recognizing Ordinance 221's restrictions on its operations, EMC attempted to negotiate an agreement with Shreveport officials that would have allowed it to drill within the 1,000 foot restriction zone. Those efforts officially failed in December 1994 when the city made it clear that no such "variance" to the ordinance's restrictions would be granted.

In 1997, EMC brought this diversity lawsuit in federal district court. EMC complained that Shreveport had no authority to regulate its drilling operations around Cross Lake. It argued that the city was precluded from doing so because under both the deed conveying the lake to the city, and under state law governing drilling permits, the state has exclusive authority to regulate drilling around Cross Lake. It further argued that even if Shreveport has some limited authority to regulate drilling around the lake, Ordinance 221 is not a reasonable exercise of that authority. Additionally it argued that even if the ordinance is a valid exercise of the city's legislative power, it constitutes a taking under both the Louisiana and United States Constitutions. Finally, it argued that the ordinance violates its equal protection and due process rights.

In response to the city's motion for summary judgment, the district court dismissed EMC's takings claim as time barred. The district court held that the three year prescription period started to run on the date Ordinance 221 was enacted in 1990, rather than on the date of the city's refusal to grant a "variance" to the ordinance's restrictions in 1994, and the prescription period ran before EMC initiated its lawsuit in 1997. On cross-motions for summary judgment, it further held that Shreveport had the authority under Louisiana state law to adopt ordinances designed to protect its water supply, including those that restrict drilling around Cross Lake. After a bench trial, it held that Shreveport acted reasonably within that authority in restricting drilling within 1,000 feet of Cross Lake. EMC appeals.

## II.

The district court's findings of fact made following a bench trial are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). Summary judgment rulings are reviewed *de novo* applying the same standards as the lower court. *See Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 173 (5th Cir. 2000).

## III.

The main issue in this case is whether the City of Shreveport has the authority to prevent oil and gas drilling within 1,000 feet of Cross Lake under its grant from the state of plenary power to protect its water supply. No one challenges Shreveport's authority to adopt ordinances designed to protect its water supply. The state clearly granted Shreveport this authority in Act 31 of 1910. *See Shreveport v. Case*, 4 So.2d 801, 803 (La. 1941) (holding that Act 31 granted that authority). Both Act 39 of 1926 and Act 145 of 1990 explicitly extend that authority to the area

5

surrounding Cross Lake up to five thousand feet. Shreveport's home rule charter grants the city the same legislative authority.

EMC argues that the City of Shreveport's ability to legislate to ban oil and gas drilling for the purpose of protecting its water supply is preempted and precluded by Louisiana's comprehensive regulation of such activities and the statutory prohibition of local regulation of drilling operations.[2] We agree. Under La. R.S. 30:28(F) the Louisiana Office of Conservation ("LOC") has the exclusive authority to regulate drilling and mining in Louisiana. Louisiana state law requires possession of a permit from the LOC to drill in the state. *See* La. R.S. 30:28(A). The statute sets out a comprehensive regulatory regime by which the LOC will determine whether to grant a permit to drill. *See* La. R.S. 30:28(D). It further provides that "[t]he issuance of the permit by the commissioner of conservation shall be sufficient authorization to the holder of the permit to enter upon the property covered by the permit and to drill in search of minerals thereon." La. R.S. 30:28(F). Even more importantly it provides that "[n]o other agency or *political subdivision* of the state shall have the authority, and they are hereby *expressly forbidden*, to prohibit or in any way interfere with the drilling of a well or test well in search of minerals by the holder of such a permit." La. R.S. 30:28(F) (emphasis added).

Two Louisiana Supreme Court cases control this case. *See Shreveport v. Curry*, 357 So.2d 1078, 1080 (La. 1978); and *Rollins Environmental Services, Inc. v. Iberville Parish Police*

---

[2] EMC also argues that the city's authority to regulate drilling within the 1,000 foot restricted area around Cross Lake is precluded by contract. The deed conveying Cross Lake to the City of Shreveport expressly reserved "a full and unrestricted right to the State, through its officers, agents or agencies, to enter thereon, and bore for oil, gas or any other minerals, . . . to drill and operate any wells that may be bored on such property." We need not decide whether Ordinance 221 infringes on the state's reserved right because of our conclusion that Ordinance 221 is preempted by comprehensive state regulation of oil and gas drilling under the LOC.

*Jury*, 371 So.2d 1127, 1131 (La. 1979). In *Curry*, the Louisiana Supreme Court considered whether a Shreveport ordinance (passed pursuant to the city's authority over Cross Lake) restricting "frog gigging"[3] on Cross Lake during months when the state explicitly authorized the taking of frogs was preempted by state regulation. *Curry*, 357 So.2d at 1079-80. The Court concluded that the ordinance was not preempted because it did "not prohibit the taking of frogs, but [] prohibit[ed] people from operating a frog gig." *Id.* at 1080. It, however, noted that "if we believed the ordinance in question were one which was intended to regulate the takings of frogs, we would be inclined to hold that the Shreveport ordinance proscribes what the state statute would permit," and that in such a situation it would have found preemption. *Id.* The court stated "[A] municipal ordinance which goes farther in its prohibitions than a state statute is valid so long as it does not forbid what the state legislature has expressly or implicitly authorized." *Id.* at 1080. As applied to this case, because Ordinance 221 proscribes what state statute would permit via the operation of the LOC, Ordinance 221 is preempted.

In *Rollins v. Iberville Parish*, the Louisiana Supreme Court considered a local Iberville Parish ordinance that prohibited the dumping of hazardous waste in the parish. *Rollins*, 371 So.2d at 1129-30. State law authorized the dumping of hazardous waste approved by the LOC and the LOC approved the dumping in question in Iberville Parish. *Id.* at 1129. Iberville argued that it permissibly acted within its authority granted by the state to "protect the health and well-being of its citizens" by prohibiting the dumping of hazardous waste in its parish. The court stated that the validity of an ordinance is "dependent upon whether the state legislature has []

---

[3] Frog gigging "is a method of taking frogs with a mechanical device, an activity accomplished . . . while in a boat close to shoreline." *Curry*, 357 So.2d at 1078 n.1.

7

enacted general laws on the same subject and thereby preempted that field of regulation." *Id. at* 1131. It found that because the state specifically authorized the dumping of the hazardous waste in Iberville, and did not grant the parish the express authority to regulate hazardous waste, the parish could not rely on a general police power to preempt specific state regulation. *See id.*; *Minden v. David Bros. Drug Co.*, 197 So. 505, 508 (La. 1940).

This case mirrors *Rollins*. The state through the LOC has authorized EMC to drill within 1,000 feet of Cross Lake. Ordinance 221 forbids EMC from drilling in that area and voids the state issued permit. Shreveport adopted this restriction on drilling under a general authority to protect its water supply and in the face of a statutory provision that specifically forbids it from interfering with the use of drilling permits. Because Ordinance 221 expressly conflicts with La. R.S. 30:28(F), under *Rollins*, Ordinance 221 is void as applied to a mineral lessee with a permit to drill in the restricted area around Cross Lake.

Shreveport argues that *Rollins* does not control because it dealt with a police jury and Shreveport is governed by a home rule charter. This distinction can be significant under Louisiana law. Under the 1974 Louisiana Constitution local governments can either be ruled by police juries or by a home rule charter. Police juries are "subordinate institutions of the state" and are fully subject to state regulation. *Rollins Envtl. Services of Louisiana v. Iberville Parish Police Jury*, 365 So.2d 497, 499 (La.App. 1st Cir. 1978). In contrast, "a municipal authority governed by a home rule charter possesses powers, in affairs of local concern within its jurisdiction, that are as broad as those of the state, except when limited by the Constitution, laws permitted by the Constitution or its home rule charter." *Civil Serv. Comm'n v. City of New Orleans*, 854 So.2d 322, 326 (La. 2003). Even if regulations issued under a home rule charter could stand in the light

8

of conflicting state regulation, which we question, the distinction does not matter in this case because the territorial jurisdiction of Shreveport's home charter covers only the bed of Cross Lake and does not extend to cover the territory they are attempting to regulate extending 1,000 feet from the lake. *Id.* (Authority under home rule charter applies only "within its jurisdiction"). As the district court found, the source of Shreveport's authority to legislate regarding the 1,000 foot restricted zone around Cross Lake is the grant of limited police power by the state legislature and not the home rule charter. *See Shreveport v. Case*, 4 So.2d 801, 803 (La. 1941). That limited authority must yield in the face of specific and comprehensive regulation by the state.

## IV.

EMC also challenges the district court's ruling that its takings claims are time barred. EMC concedes that Louisiana law governs the prescription period, and that the prescription period is three years. *See* La. R.S. 13:5111. It, however, challenges the district court's conclusion that the prescription period began to run on December 11, 1990 when Ordinance 221 was enacted into law. EMC contends that the prescription period began to run on December 13, 1994, when city officials refused to grant it a "variance" to Ordinance 221's restrictions. We disagree.

The prescriptive period begins when the owner of the right learns of the taking. *See Lieber v. DOT. & Dev.*, 682 So.2d 1257, 1261 (La.App.2d Cir. 1996). When a law effects the appropriation of the relevant property interest on its face, the enactment of the law (or notice of the enactment of the law) begins the prescription period. *See Wynat Dev. Co. v. Board of Levee Comm'rs*, 696 So.2d 163, 166-67 (La.App. 4th Cir. 1997). The district court found that EMC had actual notice of the enactment of Ordinance 221 on the date it became effective. EMC does

9

not challenge this conclusion.

EMC's argues instead that prescription should not run until December 13, 1994, when the Shreveport City Council voted to deny its request for variance to drill within the restricted 1,000 foot area of Cross Lake, relying on *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 3116 (1985), *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, and *Smith v. Brenham*, 865 F.2d 662 (5th Cir. 1989). That reliance is misplaced. In each of those cases, no taking was effected until the completion of a permit or variance procedure that was either built into the law or required as a part of deciding the use of the affected property. There is no such procedure built into Ordinance 221. The district court was correct in its conclusion that EMC's taking claim is prescribed.

## V.

In summary, we conclude that the City of Shreveport's Ordinance 221 is invalid as it attempts to regulate the drilling of oil and gas wells, an area preempted by the state through statute and regulations issued by the Louisiana Office of Conservation. Accordingly, we reverse the district court's grant of summary judgment on this question in favor of the city. We affirm the district court's judgment that EMC's takings claim is barred by prescription. We remand for entry of declaratory judgment declaring that Ordinance 221 is invalid as applied to a mineral lessee holding a permit to drill within 1,000 feet of Cross Lake and for consideration of any further relief to which EMC may be entitled.

REVERSED in part, AFFIRMED in part, REMANDED.