United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 13, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

———————————————

No. 03-30677

———————————————

ENERGY MANAGEMENT CORP.; TELLUS OPERATING GROUP, LLC,

Plaintiffs - Appellants,

v.

CITY OF SHREVEPORT,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

ON PETITION FOR REHEARING

Before DAVIS, GARZA, and PRADO, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In response to the Petition for Rehearing filed by the City of Shreveport, we withdraw the prior panel opinion in its entirety and substitute the following:

In this diversity suit, Energy Management Corporation ("EMC"), a Mississippi corporation that owns state granted mineral interests under and around Cross Lake, challenges the validity of City of Shreveport Ordinance 221 which prevents EMC from drilling within 1,000 feet of the lake. The district court dismissed EMC's takings claim as time barred. It also found that Ordinance 221 was not barred by the mineral reservation in favor of the state in the deed

conveying the lake to the city or by state regulation of oil and gas drilling in Louisiana. We agree that EMC's takings claim is prescribed but find that Ordinance 221 is preempted by Louisiana's comprehensive regulation of oil and gas drilling. Accordingly, we affirm the dismissal of the takings claim but reverse and remand the remainder of the case for entry of declaratory judgment in favor of EMC.

I.

Cross Lake is located just outside of Shreveport, Louisiana, and is the main source of water for the city. In Act 31 of 1910, the Louisiana legislature authorized the transfer of Cross Lake to the City of Shreveport. *See* 1910 La. Acts. 31. In 1914, the Secretary of State conveyed "all that portion of land belonging to the State of Louisiana in what is known as the bed of Cross Lake" to Shreveport to "provide a water supply" to the city. The deed explicitly reserved to the state "all minerals or mineral rights to and under said land, with a full and unrestricted right to the state, through its officers, agents or agencies, to enter thereon, and bore for oil, gas or any other mineral." It further reserved the right to "drill and operate any well . . . and also such other privileges as are reasonably requisite for the conduct of said operations, and the removal of any mineral."

The act authorizing the transfer of the lake to Shreveport granted the city "full and plenary power over said lake" for the purpose of "the protection and conservation of [the city's] water supply." The state made a similar grant of authority in 1926 and extended the geographic scope of that authority to the land immediately surrounding the lake up to 5,000 feet, *see* 1926 La. Acts. 39 ("The City of Shreveport is hereby granted full power and authority to adopt and enforce all needful police and sanitary ordinances and regulations for the protection of the bed and waters of

2

Cross Lake . . . from pollution and contamination from any source and is likewise granted similar power and control over the area surrounding said lake for a distance of five thousand feet . . . ."), and in 1990 reiterated its grant of this authority, *see* 1990 La. Acts 145.

In 1978, pursuant to authority granted under the 1974 Louisiana Constitution, Shreveport adopted an updated home rule charter.[1]  Section 2.03(v) of the charter provides that Shreveport shall have the power "[t]o make all necessary regulations to protect the water supply of the City from pollution and other damage, and to exercise full and unlimited police power over the bed and waters of Cross Lake and for a distance of five thousand feet from the meander contour line. . . and to pass any and all rules, regulations and ordinances deemed to be necessary for these purposes . . . ."  This grant of authority in Shreveport's home rule charter mirrors the grant of authority by the state in Act 39 of 1926.

In 1990, citing its authority to adopt ordinances designed to protect its water supply under both its home rule charter and state law, Shreveport adopted Ordinance 221.  Ordinance 221 claims to be an "overall legislative scheme to regulate hazardous activities, including but not limited to oil and gas exploration and production, that do or may pose a threat to the safety of the City's water supply."  The ordinance forbids any new drilling within 1,000 feet of Cross Lake.  It further sets up a comprehensive regulatory scheme governing all new drilling between 1,000 and 5,000 feet of Cross Lake.

In 1959, Louisiana created the Louisiana Office of Conservation ("LOC").  The LOC has the exclusive authority to grant or deny permits to drill and mine in the State of Louisiana.

---

[1] The 1978 charter replaced the 1950 charter which was enacted pursuant to the previous constitution.  Each charter granted the city the exact same legislative authority over Cross Lake.

3

Louisiana law specifically precludes local governments from interfering with decisions made by the LOC regarding drilling and mining. *See* La. R.S. 30:28(F). The statute provides that "[t]he issuance of the permit by the commissioner of conservation shall be sufficient authorization to the holder of the permit to enter upon the property covered by the permit and to drill in search of minerals thereon. No other agency or political subdivision of the state shall have the authority, and they are hereby expressly forbidden, to prohibit or in any way interfere with the drilling of a well or test well in search of minerals by the holder of such a permit." *Id.*

In the years following the conveyance of Cross Lake to the City of Shreveport, Louisiana has granted both numerous leases of its mineral interests under Cross Lake and permits authorizing drilling pursuant to those leases. EMC acquired several mineral leases granted by the state to drill and mine under and around Cross Lake. EMC did not obtain a permit from the LOC to drill on a location within 1,000 feet of Cross Lake. Rather, recognizing Ordinance 221's restrictions on its operations, EMC attempted to negotiate an agreement with Shreveport officials that would have removed the ordinance's prohibition against drilling within the 1,000 foot restriction zone. Those efforts officially failed in December 1994 when the city made it clear that no such "variance" to the ordinance's restrictions would be granted.

In 1997, EMC brought this diversity lawsuit in federal district court. EMC complained that Shreveport had no authority to regulate its drilling operations around Cross Lake. It argued that the city was precluded from doing so because under both the deed conveying the lake to the city, and under state law governing drilling permits, the state has exclusive authority to regulate drilling around Cross Lake. It further argued that even if Shreveport has some limited authority to regulate drilling around the lake, Ordinance 221 is not a reasonable exercise of that authority.

4

Additionally it argued that even if the ordinance is a valid exercise of the city's legislative power, it constitutes a taking under both the Louisiana and United States Constitutions. Finally, it argued that the ordinance violates its equal protection and due process rights.

In response to the city's motion for summary judgment, the district court dismissed EMC's takings claim as time barred. The district court held that the three year prescription period started to run on the date Ordinance 221 was enacted in 1990, rather than on the date of the city's refusal to grant a "variance" to the ordinance's restrictions in 1994, and the prescription period ran before EMC initiated its lawsuit in 1997. On cross-motions for summary judgment, it further held that Shreveport had the authority under Louisiana state law to adopt ordinances designed to protect its water supply, including those that restrict drilling around Cross Lake. After a bench trial, it held that Shreveport acted reasonably within that authority in restricting drilling within 1,000 feet of Cross Lake. EMC appeals.

## II.

Although not raised by either of the parties or addressed by the district court, we must first consider this court's jurisdiction to hear this case.[2] The specific question in this case is whether EMC has standing to challenge the City of Shreveport's Ordinance 221 as preempted by comprehensive state regulatory authority vested in the LOC in the absence of a permit to drill issued by the state for a location within the area affected by the ordinance. Under Article III of the United States Constitution, federal courts are confined to adjudicating actual "cases" and "controversies." U.S. Const. art. III, § 2, cl.1. Standing, one of the doctrines arising under the

---

[2] This court has an obligation to consider possible objections to our jurisdiction *sua sponte*. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

5

case and controversy requirement, requires a plaintiff "to demonstrate: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely . . . be redressed by a favorable decision." *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (1992)). "An injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical" *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136.

The City of Shreveport suggests that EMC lacks standing to challenge the validity of Ordinance 221 because it does not have a permit from the Louisiana Office of Conservation to drill within the area regulated by the ordinance. Accordingly, even if Ordinance 221 is declared invalid, the city argues that EMC will not necessarily be allowed to drill at its desired location within 1,000 feet of Cross Lake. This argument misconstrues EMC's desired relief.

After examining the allegations of EMC's complaint and the case law on this issue, we conclude that EMC does have standing to bring this action.[3] In the claim that survives on appeal, EMC alleges that Ordinance 221 is invalid and unenforceable because, through this ordinance, the city prohibits EMC from drilling an oil or gas well on a location within the state of Louisiana in the face of state statutes and regulations which give a state agency, the LOC, the exclusive right to grant or deny a drilling permit. EMC argues therefore that Ordinance 221 conflicts with the state statute and is preempted. EMC further alleges that because of Ordinance 221, its mineral interests in and around Cross Lake have been adversely affected. Ordinance 221 imposes

_____

[3] Standing is determined as of the time that suit is filed. *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000).

limitations on oil and gas drilling activity around Cross Lake in addition to the LOC regulations by limiting drilling locations and imposing other requirements which interfere with the exploitation of oil and gas interests by preventing or delaying the activity and making it more costly. These allegations are sufficient to state an injury in fact. EMC's right to exploit its mineral interests by seeking a drilling permit from the LOC is a legally protected property right. The City of Shreveport's prohibition of EMC's right to drill impedes that right and, according to EMC's allegations, has caused it economic loss. *Fame Publishing Co. v. Alabama Custom Tape, Inc.*, 507 F.2d 667, 668 n.1 (5th Cir.), *cert. denied*, 423 U.S. 841 (1975)(Allegation of actual economic injury is sufficient to establish injury in fact.) The injury claimed by EMC as a result of the regulations in Ordinance 221 is "fairly traceable" to the City of Shreveport's actions in enacting and enforcing the ordinance. Finally, EMC's injury will be redressed by a favorable decision. If EMC is successful in their suit, Ordinance 221's prohibition on drilling within 1,000 feet of Cross Lake will be declared invalid and unenforceable and this interference with EMC's attempts to exploit its mineral interests within the area surrounding Cross Lake under the authority of Ordinance 221 will cease. See *National Solid Waste Mgmt. Ass'n v. Pine Belt Regional Solid Waste Mgmt. Authority*, 389 F.3d 491, 498 (Plaintiffs met constitutional standing requirement because they have an injury (higher operating costs) that is traceable to the ordinances enacted by defendants and which would be remedied if the court ruled that the ordinances are unconstitutional.)

We now turn to the merits of the appeal.

### III.

The district court's findings of fact made following a bench trial are reviewed for clear

7

error and its conclusions of law are reviewed *de novo*. *See Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). Summary judgment rulings are reviewed *de novo* applying the same standards as the lower court. *See Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 173 (5th Cir. 2000).

IV.

The main issue in this case is whether the City of Shreveport has the authority to prevent oil and gas drilling within 1,000 feet of Cross Lake under its grant from the state of plenary power to protect its water supply. No one challenges Shreveport's authority to adopt ordinances designed to protect its water supply. The state clearly granted Shreveport this authority in Act 31 of 1910. *See Shreveport v. Case*, 4 So.2d 801, 803 (La. 1941) (holding that Act 31 granted that authority). Both Act 39 of 1926 and Act 145 of 1990 explicitly extend that authority to the area surrounding Cross Lake up to five thousand feet. Shreveport's home rule charter grants the city the same legislative authority.

EMC argues that the City of Shreveport's ability to legislate to ban oil and gas drilling for the purpose of protecting its water supply is preempted and precluded by Louisiana's comprehensive regulation of such activities and the statutory prohibition of local regulation of drilling operations.[4] We agree. The Louisiana Supreme Court has stated its criteria for determining whether local police powers are preempted as follows:

---

[4] EMC also argues that the city's authority to regulate drilling within the 1,000 foot restricted area around Cross Lake is precluded by contract. The deed conveying Cross Lake to the City of Shreveport expressly reserved "a full and unrestricted right to the State, through its officers, agents or agencies, to enter thereon, and bore for oil, gas or any other minerals, . . . to drill and operate any wells that may be bored on such property." We need not decide whether Ordinance 221 infringes on the state's reserved right because of our conclusion that Ordinance 221 is preempted by comprehensive state regulation of oil and gas drilling under the LOC.

8

> Local power is not pre-empted unless it was the clear and manifest purpose of the legislature to do so, or the exercise of dual authority is repugnant to a legislative objective; if there is no express provision mandating pre-emption, the courts will determine the legislative intent by examining the pervasiveness of the state regulatory scheme, the need for state uniformity, and the danger of conflict between the enforcement of local laws and the administration of the state program.

*Palermo Land Co. v. Planning Commission of Calcasieu Parish*, 561 So.2d 482, 497 (La. 1990); see also *Hildebrand v. City of New Orleans*, 549 So.2d 1218 (La. 1989). In this case there is no express provision mandating pre-emption. However, all other inquiries lead to the conclusion that local regulation of oil and gas drilling activities is preempted by comprehensive state regulation of oil and gas activities under the LOC.

Regulations by the state of oil and gas drilling activity through the LOC are clearly pervasive addressing every phase of the oil and gas exploration process from exploration and prospecting to cleanup of abandoned oilfield waste sites. La. R.S. 30:1, et seq.; Statewide Order 29-B. Addressing a challenge to the authority of the LOC to issue orders relating to gas balancing between producers in a unit, the Louisiana Supreme Court has stated that the "authority and responsibility for conserving Louisiana's oil and gas resources are virtually entirely vested in the office of the Commissioner of Conservation, Department of Conservation." *Hunt v. Batchelor*, 644 So.2d 191, 196-97 (La. 1994). In every case which has been brought to our attention involving a challenge to the authority of the LOC, its far-reaching authority has been upheld. See *Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury*, 371 So.2d 1127 (La. 1979)(LOC regulations and permit governing deep well disposal facilities preempted parish ordinance prohibiting disposal of hazardous waste within the parish.); *Greater New Orleans Expressway Com. v. Traver Oil Co.*, 494 So. 2d 1204 (La.App. 5th Cir.

9

1986)(Causeway commission could not restrict drilling within one mile of Causeway Bridge contrary to authorization of LOC and Corps of Engineers.); *Desormeaux Enterprises, Inc. v. The Village of Mermentau*, 568 So.2d 213 (La. App. 3d Cir. 1990)(Village ordinance prohibiting corporation from operating disposal facility on property if it received a permit from the commissioner of conservation found null and void.).  The Louisiana Attorney General has consistently concluded that attempts at local regulation of drilling operations are preempted by state law.  Such regulation is within the exclusive authority of the LOC, precluding regulation by other governing bodies.  La. Atty. Gen. Op. Nos. 82-1021, 88-418, and 89-416.

The statute itself reflects a desire for state uniformity and addresses the danger of conflict between the state program and enforcement of local laws.  Under La. R.S. 30:28(F) the Louisiana Office of Conservation ("LOC") has the exclusive authority to regulate drilling and mining in Louisiana.  Louisiana state law requires possession of a permit from the LOC to drill in the state.  *See* La. R.S. 30:28(A).  The statute sets out a comprehensive regulatory regime by which the LOC will determine whether to grant a permit to drill.  *See* La. R.S. 30:28(D).  It further provides that "[t]he issuance of the permit by the commissioner of conservation shall be sufficient authorization to the holder of the permit to enter upon the property covered by the permit and to drill in search of minerals thereon." La. R.S. 30:28(F).  Even more importantly it provides that "[n]o other agency or *political subdivision* of the state shall have the authority, and they are hereby *expressly forbidden*, to prohibit or in any way interfere with the drilling of a well or test well in search of minerals by the holder of such a permit." La. R.S. 30:28(F) (emphasis added). These statutory provisions make it clear that the process of regulating when and where an oil and gas well may be drilled within the state is entirely vested in the LOC and interference by other

10

political bodies is prohibited. Moreover, the statute gives the Commissioner authority to issue regulations and orders to "ensure ground water aquifer safety," which is the same concern motivating the adoption of Ordinance 221.

In such circumstances, Louisiana courts have found that local ordinances are preempted by state regulation of the same area. In *Rollins*, the Louisiana Supreme Court struck down a parish ordinance which attempted to regulate the disposal of hazardous wastes, holding that the existence of a comprehensive scheme of federal and state environmental laws preempted enforcement of local ordinances by local governments designed to independently regulate the same area. 371 So.2d 1127. In *Twin Parish Port Commission v. Berry Brothers, Inc.*, 663 So.2d 257 (La.App. 3d Cir. 1995), the Louisiana Third Circuit Court of Appeals declared an ordinance issued by the port commission preempted by comprehensive state regulations of the same area the ordinance attempted to regulate. The port commission had issued an ordinance making it unlawful to discharge "any oil, grease or refuse matter" into any navigable water, including Lake Peigneur, which was within the district of the commission. The state court reviewed the statutory provisions delegating responsibility for formulating and promulgating environmental regulations to the Louisiana Department of Environmental Quality and its Office of Water Resources. Although none of the provisions cited directly stated that these state agencies had exclusive authority over the area and none specifically barred local governments from regulating in the same area, the court concluded that the allocation of responsibility for such activities in state agencies preempted local regulation. In this case, even a quick review of state statute establishing the Office of Conservation and designating its authority reveals that Ordinance 221 clearly overlaps and conflicts with those provisions. La.R.S. 30:1 et seq. As a practical matter, if Ordinance 221

11

is enforced, this nullifies the LOC's authority to exercise its discretion to grant or deny a drilling permit at EMC's proposed drill site. In these circumstances, the local ordinance must yield to comprehensive state regulation.

Shreveport argues that *Rollins* does not control because it dealt with a police jury and Shreveport is governed by a home rule charter. This distinction can be significant under Louisiana law. Under the 1974 Louisiana Constitution local governments can either be ruled by police juries or by a home rule charter. Police juries are "subordinate institutions of the state" and are fully subject to state regulation. *Rollins Envtl. Services of Louisiana v. Iberville Parish Police Jury*, 365 So.2d 497, 499 (La.App. 1st Cir. 1978). In contrast, "a municipal authority governed by a home rule charter possesses powers, in affairs of local concern within its jurisdiction, that are as broad as those of the state, except when limited by the Constitution, laws permitted by the Constitution or its home rule charter." *Civil Serv. Comm'n v. City of New Orleans*, 854 So.2d 322, 326 (La. 2003). Even if regulations issued under a home rule charter could stand in the light of conflicting state regulation, which we question, the distinction does not matter in this case because the territorial jurisdiction of Shreveport's home charter covers only the bed of Cross Lake and does not extend to cover the territory they are attempting to regulate extending 1,000 feet from the lake. *Id.* (Authority under home rule charter applies only "within its jurisdiction"). As the district court found, the source of Shreveport's authority to legislate regarding the 1,000 foot restricted zone around Cross Lake is the grant of limited police power by the state legislature and not the home rule charter. *See Shreveport v. Case*, 4 So.2d 801, 803 (La. 1941). For the reasons stated above, that limited authority must yield in the face of specific and comprehensive regulation by the state.

12

IV.

EMC also challenges the district court's ruling that its takings claims are time barred. EMC concedes that Louisiana law governs the prescription period, and that the prescription period is three years. *See* La. R.S. 13:5111. It, however, challenges the district court's conclusion that the prescription period began to run on December 11, 1990 when Ordinance 221 was enacted into law. EMC contends that the prescription period began to run on December 13, 1994, when city officials refused to grant it a "variance" to Ordinance 221's restrictions. We disagree.

The prescriptive period begins when the owner of the right learns of the taking. *See Lieber v. DOT. & Dev.*, 682 So.2d 1257, 1261 (La.App.2d Cir. 1996). When a law effects the appropriation of the relevant property interest on its face, the enactment of the law (or notice of the enactment of the law) begins the prescription period. *See Wynat Dev. Co. v. Board of Levee Comm'rs*, 696 So.2d 163, 166-67 (La.App. 4th Cir. 1997). The district court found that EMC had actual notice of the enactment of Ordinance 221 on the date it became effective. EMC does not challenge this conclusion.

EMC's argues instead that prescription should not run until December 13, 1994, when the Shreveport City Council voted to deny its request for variance to drill within the restricted 1,000 foot area of Cross Lake, relying on *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 3116 (1985), *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, and *Smith v. Brenham*, 865 F.2d 662 (5th Cir. 1989). That reliance is misplaced. In each of those cases, no taking was effected until the completion of a permit or variance procedure that was either built into the law or required as a part of deciding the use of the affected property.

13

There is no such procedure built into Ordinance 221. The district court was correct in its conclusion that EMC's taking claim is prescribed.

V.

In summary, we conclude that the City of Shreveport's Ordinance 221 is preempted by state law and is invalid to the extent that it purports to prohibit the drilling of oil and gas wells in an area within the state of Louisiana, an authority granted exclusively by state statute and regulations to the Louisiana Office of Conservation. Accordingly, we reverse the district court's grant of summary judgment on this question in favor of the city. We affirm the district court's judgment that EMC's takings claim is barred by prescription. We remand for entry of declaratory judgment declaring that Ordinance 221 is invalid to the extent stated above and for consideration of any further relief to which EMC may be entitled.

REVERSED in part, AFFIRMED in part, REMANDED.