**John A. KETTERLE and John E. Ketterle,
Plaintiffs–Counter–Defendants–Appellants,**

v.

**B.P. OIL, INC.,
Defendant–Counter–Plaintiff–Appellee.**

**No. 89–3058.**

United States Court of Appeals, Eleventh Circuit.

Aug. 15, 1990.

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

Maura T. Smith, Smith, MacKinnon, Mathews, Harris & Christiansen, P.A., Orlando, Fla., and Richard W. Farrell, Farrell & Barr, Stamford, Conn., for plaintiffs-counter-defendants, appellants.

Jeffry R. Jontz, Holland & Knight, Orlando, Fla., for defendant-counter-plaintiff, appellee.

Before TJOFLAT, Chief Judge, and ANDERSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The plaintiffs in this case appeal the district court's denial of their motion for attorneys' fees under section 2805 of the Petroleum Marketing Practices Act of 1978 ("PMPA").[1] The district court refused to award fees after granting the defendant's unopposed motion to dismiss the case as moot. The court held that because the dismissal on the merits came before the plaintiffs received a final determination of their claims, they did not "prevail" under the Act. Because we find that the district court incorrectly interpreted the Act and that the plaintiffs did indeed prevail under the Act, we now reverse.

I.

The plaintiffs, John A. Ketterle and John E. Ketterle (the "Ketterles"), operate a "Gulf" gasoline service station in Orlando, Florida. The Ketterles have operated the station at this location for over 25 years and it is the family's major source of income. In 1987, the Ketterles operated the station under a franchise agreement with the defendant, B.P. Oil, Inc. ("B.P."). The franchise agreement relevant to this case allowed the Ketterles to operate the station during the period from October 1, 1985 to September 30, 1988.

One of the terms in the franchise agreement specified that the Ketterles were required to keep the station open until midnight. During the period from August 10, 1987 to August 21, 1987, the Ketterles' station closed before midnight each of these twelve nights. The Ketterles allege that during this period their regular night operator was on vacation. Affidavits of the Ketterles filed in district court state that the temporary night operator closed the station early contrary to their explicit instructions, and that they had checked on the temporary operator on more than one occasion and were unaware of his failure to keep the station open. B.P. became aware of the early closures, and on September 1, 1987, the Ketterles were notified that their franchise would be terminated effective December 1, 1987.

On November 25, 1987, the Ketterles filed this action seeking to prevent B.P.'s termination of their franchise agreement. The Ketterles' suit alleged that the threatened termination of their franchise agreement violated the PMPA, which prevents termination of the franchise agreement by the oil company for reasons other than the

1. The Act is codified at 15 U.S.C. § 2801, *et seq.*

grounds for termination explicitly specified in the Act. *See* 15 U.S.C. § 2802 (1982). In its answer, B.P. alleged that termination of the agreement for failure to keep the station open was permitted under sections 2802(b)(2)(A) and 2802(b)(2)(B) of the PMPA.[2]

Pursuant to section 2805 of the Act,[3] the Ketterles moved for a preliminary injunction in order to prevent the termination of the agreement before their claim could be adjudicated. After holding an evidentiary hearing, the district court granted the preliminary injunction. The district court recognized that a violation of an "hours of operation" provision has been held to be sufficient grounds for termination of a franchise agreement. Nevertheless, the district court granted the preliminary injunction, finding (1) that the circumstances of this case presented a fair ground for litigation, and (2) that the hardship that B.P. would face from granting the injunction would be less than the hardship to the Ketterles if the injunction was not granted.

The parties then conducted discovery. The Ketterles requested internal B.P. marketing reports that detailed the company's plan for the stations in the Orlando and Tampa area. B.P. strenuously opposed production of these documents, even in the face of an order to produce from the district court. A few days before the date that the pretrial stipulation was due to be filed, the Ketterles filed a motion for imposition of sanctions against B.P. for its failure to comply with the court's discovery order.

The next day B.P. withdrew its notice of termination and moved to have the case dismissed as moot. Thereafter, the Ketterles filed a motion for attorneys' fees and costs pursuant to § 2805(d) of the PMPA.[4] The district court denied the motion holding:

> This case was concluded by the unopposed Motion of Defendants to Dismiss which was granted by the Court in an Amended Order filed November 15, 1988. There was no determination that the Plaintiffs Franchisees were the prevailing party in this litigation which involved substantial issues of breach of a Franchise Agreement; therefore, the Franchisees are not the prevailing party on the merits of their claim. To award costs and attorneys' fees at this juncture of the proceeding would necessitate the Court hearing the evidence and making a determination on the merits, a judicial proceeding which has been obviated by the dismissal of the case.

District Court Order Denying Attorneys' Fees at 1–2. The plaintiffs now appeal this denial.

## II.

We begin with an analysis of the five cases applying § 2805(d)(1) when the plain-

---

**2.** Paragraph 2(A) provides that termination of the franchise agreement is permissible if the franchisee fails to "comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship." 15 U.S.C. § 2802(b)(2)(A). Paragraph 2(B) authorizes termination if the franchisee fails to "exert good faith efforts to carry out the provisions of the franchise." *Id.* at § 2802(b)(2)(B).

**3.** The Act provides that:

[T]he court shall grant a preliminary injunction if—

(A) the franchisee shows

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. § 2805(b)(2).

**4.** That section provides:

(1) If the franchisee prevails in any action under subsection (a) of this section, such franchisee shall be entitled—

. . . . 

(C) to reasonable attorney and expert witness fees to be paid by the franchisor, unless the court determines that only nominal damages are to be awarded, in which case the court, in its discretion, need not direct that such fees be paid by the franchisor.

15 U.S.C. § 2805(d)(1).

tiffs failed to receive a PMPA damage award. In *Lippo v. Mobil Oil Co.*, 776 F.2d 706 (7th Cir.1985), the only appellate consideration of § 2805(d)(1), the franchisee obtained injunctive relief under the PMPA and monetary relief based upon a state breach of contract claim. The district court awarded attorneys' fees and the defendant appealed, arguing that the injunction provided an insufficient basis to support a fee award. The court of appeals affirmed the award of fees, holding that "a franchisee who obtains injunctive relief under the PMPA is entitled to attorney's fees even though the franchisee does not obtain either actual or exemplary monetary damages." *Id.* at 720.

The *Lippo* court referred to the decision in *Lyons v. Mobil Oil Co.*, 554 F.Supp. 199 (D.Conn.1982), to support its conclusion that injunctive relief is sufficient to allow a plaintiff to receive an attorneys' fee award. In *Lyons*, the court entered a permanent injunction after finding the defendant's attempt to terminate the franchise violated the PMPA. In finding that the injunctive provisions of the PMPA were important provisions of the Act, the court noted:

Injunctive relief is an important part of the PMPA scheme, being specifically provided for in 2805(b). History of the development of PMPA, combined with a basic understanding of the inequity sought to be corrected in the franchise relationship by the legislation, and the irreparable harm that necessarily would arise from the termination of a franchise relationship, leads logically to only one conclusion. The basic premise of PMPA is that injunctive relief should be available to preserve the franchise in question, so as to avoid the termination of the franchise with inevitable litigation following on the damages issues. Therefore it seems to this court that a franchisee who obtains injunctive relief should be considered a "prevailing party" for the purposes of 2805(d)(1), regardless of whether actual or exemplary monetary damages are awarded. Such would be in keeping with the remedial purpose of PMPA to equalize the otherwise drastically unequal bargaining power of petroleum franchisees and franchisors. In view of the importance of the injunctive relief concept under the statute, it would appear to frustrate the purpose of PMPA if this court were to fail to recompense the franchisee in this case who was required to litigate in order to preserve his franchise.

*Id.* at 202. Consistent with this view, the court awarded attorneys' fees. *Id.* at 202–03. Finally, in *Trulock v. Union Oil Co*, No. C83–1553M (D.Wash. March 23, 1984), a case with facts similar to this case, the court also relied on *Lyons.*

There are, however, two cases where the court refused to award attorneys' fees. The first is *Thompson v. AMOCO Oil Co.*, 705 F.Supp. 1349 (M.D.Ill.1989). In *Thompson,* the defendant sought to terminate the franchise because the franchisee had moved 300 miles away from the station allegedly in violation of a contractual provision requiring the franchisee "to devote his personal attention upon the premises to managing the business activities of the gasoline sales facility." *Id.* at 1551–52. The plaintiff prevailed on his claim for injunctive relief after the court found that the franchisee's conduct did not violate the agreement. The plaintiff had not suffered any damages because the parties agreed to maintain the status quo; therefore, no damages were awarded. The court also rejected the franchisee's claim for exemplary damages. Since Thompson had not received any monetary relief, the court evaluated the attorneys' fee request under the proviso in § 2805(d)(1)(C) allowing the court discretion to award the attorneys' fees when the plaintiff only receives nominal relief. The court declined to award the fees holding:

[S]o in our discretion we decline to charge defendant with these fees. As noted, this has been a close, hard fought battle. Thompson is not clearly in the right here—Clause 15(f) can be read to require actual presence, and AMOCO was not unreasonable in attempting to enforce its policy against a franchisee living 300 miles from the franchised premises. Moreover, ... Thompson can

afford to pay his own fees, and so AMO-CO will not be required to.

705 F.Supp. at 1359.

In *Noe v. Mobil Oil Co.*, 503 F.Supp. 213 (D.Mo.1980), the court found the franchisee had given improper notice to the franchisor because the notice failed to state the reasons for the termination. The court enjoined termination based upon the improper notice, but expressly refused to forbid the defendant from terminating the franchise after complying with the PMPA. *Id.* at 216. The court refused to award any monetary damages as none were shown. As to attorneys' fees, the court noted:

> The court will also not require the defendant to pay the plaintiff's attorney's fees, as the plaintiff has not recovered actual or punitive damages.

*Id.* at 216.

Understandably, the plaintiffs argue that the text of the Act and the *Lippo* and *Lyons* cases all support the contention that injunctive relief satisfies the Act's requirement that they prevail in order to be entitled to an attorneys' fee award. The Ketterles emphasize that in *Trulock* a TRO was sufficient injunctive relief to constitute prevailing party status. They reason that, if a TRO is to be considered sufficient to permit an attorneys' fee award, a preliminary injunction should also be sufficient since the requirements for obtaining a preliminary injunction require a greater showing than a TRO.

In determining whether a plaintiff is a "prevailing party," it is necessary to evaluate the facts of each particular case. The fact that this is an action under the PMPA does not alter the analysis. The question of whether a party who does not obtain a final judgment on all of his claims prevails for the purpose of a fee shifting statute is one that the federal courts have been called on to answer many times. *See, e.g., Texas State Teachers Assoc. v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *Dunn v. Florida Bar*, 889 F.2d 1010, 1015 (11th Cir.1989); *Royal Crown Cola v. Coca–Cola*, 887 F.2d 1480 (11th Cir.1989); *Martin v. Heckler*, 773 F.2d 1145 (11th Cir.1985) (en banc). Many times the courts have used cases interpreting one fee shifting statute when faced with the interpretation of another. For example, in this court's opinion in *Royal Crown Cola*, 887 F.2d at 1485, the court relied on § 1988 cases in interpreting, section 16 of .Clayton Act, the attorney fee provision applicable in antitrust cases. In addition, the Supreme Court noted in *Texas State Teachers*, that it granted certiorari in the case "because of the importance of the term 'prevailing party' to the application of § 1988 *and other federal fee shifting statutes.*" 489 U.S. at ——, 109 S.Ct. at 1489 (emphasis added).

We now turn to the question of whether the Ketterles prevailed in their action against B.P. The Ketterles present a simple argument for why they prevailed. Had they not filed the suit against B.P., they would have been forced out of their station on December 1, 1987 by the termination letter. The preliminary injunction removed the threat of the termination and protected them until the defendant withdrew the termination. They argue that the defendant's decision to sell the station and thus withdraw from the litigation is irrelevant to this analysis because, had they not filed the PMPA action, they would have been required to vacate and would not have been operating the station at the time the defendant sold it.

The defendant alleges that the district court was correct in concluding that the defendant's termination mooted the controversy. B.P. argues that the standard for granting a preliminary injunction in PMPA cases is a rather lax one that does not relate to the merits of the action. Furthermore they argue that because the injunctive relief was preliminary, it did not survive the order dismissing the action. *See Cypress Barn, Inc. v. Western Electric Co.*, 812 F.2d 1363, 1364 (11th Cir.1987). Finally, they assert that their decision to withdraw the termination was based upon the business decision not to press their right to terminate the franchise agreement in the face of a business decision to sell the station. In essence, this argument is an assertion by the defendant that the compa-

ny voluntarily gave the plaintiffs the relief they sought, and therefore, the plaintiffs cannot contend that the relief was obtained because of the lawsuit. Under these circumstances, B.P. argues that the district court's denial of attorneys' fees was not an abuse of discretion.

■ The defendant's first argument is relevant to the question of whether the plaintiffs had a claim against B.P. This circuit has recognized that to recover attorneys' fees after the defendant has voluntarily agreed to the relief sought by the plaintiffs, the plaintiffs must show that they had a "colorable claim" or "reasonable likelihood of success on the merits." *Dunn*, 889 F.2d at 1015 (quoting *Hennigan v. Ouachita Parish School Bd.*, 749 F.2d 1148, 1153 (5th Cir.1985). In this case the district court granted the preliminary injunction after finding that the plaintiffs had presented "a serious question [constituting] a fair ground for litigation." District Court Order Granting Preliminary Injunction at 6. The defendant has not suggested that this finding was incorrect— only that it did not amount to a finding of success on the merits. Additionally, our review of the record provides us no basis to dispute this finding. While the court did not make a finding that the plaintiffs presented a colorable claim, the above quoted finding is sufficient to allow us to conclude that they did.[5]

■ The defendant's second argument is that the plaintiffs did not obtain the relief they requested. For this proposition, the defendant cites the opinion in *Texas State Teachers* which held that to be considered prevailing the plaintiff must obtain success on a "significant issue in [the] litigation

which achieves some of the benefit the parties sought in bringing suit." 489 U.S. at ——, 109 S.Ct. at 1491. This case, however, is factually distinguishable from that case. In *Texas State Teachers*, the court dealt with a case where the plaintiff only obtained relief on one of several claims. *Id.* at ——, 109 S.Ct. at 1490. Even under the more restrictive "primary relief sought" test which was the law of this circuit[6] before it was rejected by the *Texas State Teachers* Court, the plaintiff was the prevailing party. The first relief sought by the Ketterles was to stay in their station pending the litigation—notwithstanding the violation of the hours of operation provision. The ultimate relief sought by plaintiffs was the continuation of the franchise contract. This could have been accomplished by completion of the lawsuit and a judgment being entered on behalf of the plaintiffs. The defendant made further litigation unnecessary by filing a motion to dismiss the case and saying in its motion:

> B.P. Oil Company has now decided to withdraw the Notice of Termination of Dealer Lease and Supply Agreement and Notice of Termination of Residential Property Lease, and all related agreements contained in the September 1, 1987 letter to the Plaintiffs. Attached is a letter from undersigned counsel to Maura Smith, counsel for the Plaintiffs, dated October 13, 1988 advising the Plaintiffs that B.P. Oil Company withdraws the notices of termination.

R2–45 at 2.

The district court dismissed the case as moot. The defendant had conceded defeat and the litigation was over. The fact that B.P. was selling its stations in the area to another company is no reason for con-

---

**5.** The district court held that the letter revoking the termination mooted the controversy. Under these circumstances, the court was reluctant to hear evidence and make a determination on the merits. This interpretation of the mootness doctrine was incorrect. While the issues dealing with the merits of the case were moot, the court acknowledged in its November 15, 1988 order that it retained jurisdiction to determine the question of attorney fee awards. Thus, the question of attorney fees was not moot. The fact that the court would have been forced to hold additional proceedings to determine

whether the plaintiff prevailed is not in any sense unusual. *See Royal Crown*, 887 F.2d at 1483 (district court held oral argument and considered additional briefs before entering attorney fee award in case resolved on stipulated dismissal); *see also Dunn*, 889 F.2d at 1011 (district court resolved question of whether plaintiffs were prevailing parties on the merits after stipulated dismissal was entered).

**6.** *See Martin v. Heckler*, 773 F.2d 1145, 1149 (11th Cir.1985) (en banc).

ceding defeat. The buyer could have been substituted as a party defendant for the defendant/seller as a part of the contract. This is done daily in the business world. Whatever the reason, the plaintiffs secured full relief from the withdrawal of the termination notice and were the prevailing parties.

The order of the district court denying attorneys' fees is REVERSED and the case is REMANDED to the district court for the award of attorneys' fees if the parties cannot settle the issue.

REVERSED and REMANDED.