United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 6, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 05-30551

ENERGY MANAGEMENT CORP.;
TELLUS OPERATING GROUP, LLC,

Plaintiffs-Appellants,

versus

CITY OF SHREVEPORT,

Defendants-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Plaintiff-Appellant Energy Management Corporation ("EMC") appeals the district court's judgment on remand declaring City of Shreveport ("Shreveport") Ordinance 221 "invalid" rather than "preempted." EMC also challenges the district court's refusal to award damages, attorney's fees and costs. For the following reasons, we reverse and remand the judgment of the district court regarding the declaratory judgment language, holding that the prior panel intended Ordinance 221 be preempted by state law. We affirm the district court's refusal to award damages and attorney's fees and we remand the issue of allocation of costs to the district court for further consideration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cross Lake, the focal point of this litigation, is the main source of water for Shreveport, Louisiana. *Energy Mgmt. Corp. v. City of Shreveport* (*Energy Mgmt. I*), 397 F.3d 297, 299 (5th Cir. 2005). In 1910, the Louisiana legislature authorized the transfer of Cross Lake to Shreveport but the state reserved all minerals and mineral rights, as well as the right to drill and operate wells. *Id.* Then, in 1959, Louisiana established the Louisiana Office of Conservation ("LOC") as the exclusive authority to grant drilling permits; under Louisiana Revised Statute section 30:28(F), a city government is specifically precluded from interfering with the decision of the LOC on these matters. La. Rev. Stat. § 30:28(F) (2005). In 1990, Shreveport enacted Ordinance 221, forbidding any new drilling within 1,000 feet of Cross Lake ("1,000 feet zone")[1] and setting up, among other rules, a comprehensive regulatory scheme relating to various aspects of drilling activities within 5,000 feet of the lake.[2] EMC, a Mississippi corporation that owns Louisiana state-granted mineral interests under and around Cross Lake, had already acquired mineral leases from the state by this time, but had not obtained a permit from the LOC. EMC first attempted to negotiate with Shreveport to ease its

---

[1]Both attorneys, during oral argument and in their respective briefs, refer to this area as the "1,000 feet zone."

[2]Ordinance 221 is located at volume 1, pages 12-24 of the record. In addition to the drilling requirements mentioned, the ordinance's regulations include, for example, minimum casing requirements, § 37-137, insurance requirements, § 37-146, plugging and abandonment requirements, § 37-148, and a requirement to submit diagrams of well locations, § 37-138, and drilling fluid programs, § 37-136, to Shreveport's Director of Water and Sewerage for the Director's approval. Each provision of the ordinance relates in some way to the regulation of the oil and gas drilling or production process.

2

restrictions within the 1,000 feet zone.  The negotiations proved unsuccessful; thus, no permit was ever obtained from the LOC, and eventually, EMC lost its ownership in the subject leases.

In 1997, EMC brought this diversity suit, alleging that Shreveport had no authority to regulate drilling around Cross Lake.  *Energy Mgmt. I*, 397 F.3d at 300.  In that prior appeal, this court concluded,

> [T]he City of Shreveport's Ordinance 221 is preempted by state law and is invalid to the extent that it purports to prohibit the drilling of oil and gas wells in an area within the state of Louisiana, an authority granted exclusively by state statute and regulations to the [LOC].

*Id.* at 306.  This court reasoned that Louisiana statutory and case law as well as opinions of the Louisiana Attorney General supported this decision. *Id*. at 303–04.  Therefore, the matter was remanded to the district court "for entry of declaratory judgment declaring that Ordinance 221 is invalid to the extent stated above and for consideration of any further relief to which EMC may be entitled." *Id.*

On remand, the district court requested briefing from the parties regarding appropriate declaratory judgment language and any additional relief for EMC.  Subsequently, the district court entered the judgment as follows: "Ordinance 221 is hereby DECLARED invalid to the extent that it purports to prohibit the drilling of oil and gas wells in an area within the state of Louisiana." *Energy Mgmt. Corp. v. City of Shreveport*, No. 97-2408 (W.D. La.  May 5, 2005) (order granting declaratory judgment).  The district court did not track the language of the prior panel in *Energy Management I*, which stated that the ordinance was preempted by state law.  Moreover, the district court found that EMC was not entitled to additional relief.  The court stated:

> Under Louisiana laws and legal principles, oil, gas and other minerals are fugacious matter and are subject to capture.  The damages complained of and testified to by

3

EMC experts are based on the value of lost production. The sought after minerals are still in place and subject to capture. They are not "lost."

*Id.* The court also stated, without explanation, that EMC was not entitled to attorney's fees but made no comment regarding EMC's entitlement to costs. *See id.* Because it argues that Shreveport is actively interpreting[3] the language of the district court as invalidating only the 1,000 feet provision and continuing to enforce the remainder of the ordinance, EMC appeals the district court's ruling.

## II.  DISCUSSION

A. The District Court's Interpretation of the Declaratory Judgment Language

1. Standard of Review

This court has a limited scope of review after remand. *Volk v. Gonzalez*, 262 F.3d 528, 533 (5th Cir. 2001). "On a second appeal following remand, the only issue for consideration is whether the court below reached its final decree in due pursuance of [this court's] previous opinion and mandate." *Id.* (alteration in original) (quoting *Burroughs v. FFP Operating Partners*, 70 F.3d 31, 33 (5th Cir. 1995)). We can consider a prior opinion to determine what was actually intended, but we will not reconsider issues already decided by the earlier panel. *Burroughs*, 70 F.3d at 33.

2. Analysis

Before we reach the merits of this appeal, we first address Shreveport's claim that EMC lacks standing to contest the entirety of the ordinance and that an opinion issued by this court declaring the ordinance entirely preempted would be nothing more than an advisory opinion. At oral argument,

---

[3]Furthermore, the only court to interpret the holding in *Energy Management I* characterizes it as, "the EMC case pertains to a mineral lessee challenging the validity of a Shreveport city ordinance relating to drilling *within 1,000 feet of Cross Lake*." *Holland v. Questar Exploration & Prod. Co.*, No. 03-2087, 2006 WL 461127, *3 n.3 (W.D. La.  February, 23, 2006) (emphasis added).

counsel for Shreveport explained that because EMC was not a LOC permit holder, and the state of Louisiana is not a party to the suit, this court cannot render a judgment as to whether the entirety of Ordinance 221 conflicts with state law because such a judgment would amount to an advisory opinion. Shreveport's argument, however, is incorrect. The panel in *Energy Management I* specifically found that EMC had standing to bring this suit and nowhere stated that EMC's standing was limited.[4] *Energy Mgmt. I*, 397 F.3d at 301–02. As we have explained, the issues decided by the first panel will not be relitigated. *See Burroughs*, 70 F.3d at 33. Shreveport's contention that the 1,000 feet zone portion of Ordinance 221 is the only portion invalidated by the district court's decision because EMC only had standing to contest Ordinance 221 as it related to the 1,000 feet zone, therefore, must fail. Likewise, this opinion is not advisory because EMC brought suit against Shreveport contesting Ordinance 221 in its entirety.

This court has previously determined that EMC has the necessary standing; therefore, our holding today turns solely on our determination of whether the prior panel intended that Louisiana law preempt Ordinance 221 and, if so, whether the declaratory judgment language of the district court reflects that intent. EMC contends that the *Energy Management I* panel found Ordinance 221 preempted in whole; however, the language of the district court's opinion does not reflect this conclusion. EMC is concerned that this overly narrow language could lead to the enforcement of provisions that do not prohibit drilling but, nevertheless, restrict related activities because the present judgment implies that Shreveport retains the ability to enforce costly and unnecessary requirements

---

[4]In fact, in order to fully address whether EMC had standing, the *Energy Management I* panel withdrew its previous opinion in its entirety, *Energy Mgmt. Corp. v. City of Shreveport*, 03-30677, 2004 WL 2192376 (5th Cir. Oct 15, 2004), and substituted the opinion referred to infra as *Energy Management I*.

not required by Louisiana for the drilling of oil and gas wells within the state. In contrast, Shreveport argues that the only right exclusively statutorily reserved to the LOC is the oversight of drilling and, therefore, Ordinance 221 is not invalid in its additional respects; it asserts that the district court tracked the limiting language of this court's *Energy Management I* decision.

Our duty is to review this case considering whether the court below effected the mandate of the first panel. *Volk*, 262 F.3d at 533. Our reading of the *Energy Management I* panel opinion clearly indicates that the court evaluated the various regulatory aspects of the ordinance and ultimately determined that Ordinance 221 was preempted in its entirety. Therefore, Shreveport's claims on this matter are unsupported by the prior opinion. A closer look at *Energy Management I* is not only instructive, but also dispositive.

The prior panel stated:

> "Local power is not pre-empted unless it was the clear and manifest purpose of the legislature to do so, or the exercise of dual authority is repugnant to a legislative objective; if there is no express provision mandating pre-emption, the courts will determine the legislative intent by examining the pervasiveness of the state regulatory scheme, the need for state uniformity, and the danger of conflict between the enforcement of local laws and the administration of the state program." *Palermo Land Co. v. Planning Comm'n of Calcasieu Parish*, 561 So. 2d 482, 497 (La. 1990). In this case there is no express provision mandating pre-emption. However, all other inquiries lead to the conclusion that local regulation of oil and gas drilling activities is preempted by comprehensive state regulation of oil and gas activities under the LOC.
>
> Regulations by the state of oil and gas drilling activity through the LOC are clearly pervasive addressing every phase of the oil and gas exploration process from exploration and prospecting to cleanup of abandoned oilfield waste sites. . . . In every case which has been brought to our attention involving a challenge to the authority of the LOC, its far-reaching authority has been upheld.

397 F.3d at 303. The opinion's reference not just to drilling but to drilling "activities," as well as its statement that the regulations address "every phase of the . . . process," supports our interpretation

6

that the prior panel's language effectuated the preemption of Ordinance 221 in its entirety. Furthermore, in support of its determination, the prior panel highlighted Louisiana cases upholding the "far-reaching" authority of the LOC, cases which addressed not only drilling[5] but also other aspects of the drilling process, including post-drilling disposal.[6]

Thereafter, the prior panel relied on Louisiana Attorney General ("AG") opinions to support its holding. According to the panel, the Louisiana AG "has consistently concluded that attempts at local regulation of drilling operations are preempted by state law." *Id*.[7] One of the opinions addressed whether a local governing body could require permits from oil and gas operators for the use of local roads. La. Op. Att'y Gen. 88-418 (1988), 1988 WL 428412. The AG found such permits to be an impermissible interference with a valid permit issued by the LOC. *Id*. Likewise, Ordinance 221 greatly complicates the drilling process around Cross Lake and, arguably, interferes with drilling. For example, under section 37-133 of the ordinance, titled "Approval Required," the

---

[5]*Energy Mgmt. I*, 397 F.3d at 303 (citing *Greater New Orleans Expressway Comm'n v. Traver Oil Co.*, 494 So. 2d 1204 (La. Ct. App. 1986) (holding that the Commission could not restrict drilling within one mile of the New Orleans Causeway Bridge contrary to authorization of LOC and Corps of Engineers)).

[6]*Energy Mgmt. I*, 397 F.3d at 303 (citing *Rollings Envtl. Servs. of La., Inc. v. Iberville Parish Police Jury*, 371 So. 2d 1127 (La. 1979) (determining that LOC regulations preempted a parish ordinance prohibiting disposal of hazardous waste within the parish); *Desormeaux Enters., Inc. v. Vill. of Mermentau*, 568 So. 2d 213 (La. Ct. App. 1990) (invalidating an ordinance prohibiting a corporation from operating a disposal facility on property within the village only after it received a permit from the commissioner of conservation)); *see also Twin Parish Port Comm'n v. Berry Bros., Inc.*, 663 So. 2d 257 (La. Ct. App. 1995) (declaring an ordinance regulating the discharge of oil into a navigable water preempted by comprehensive state regulations).

[7]The *Energy Mgmt. I* panel cited three opinions from the Louisiana Attorney General, two of which dealt directly with permitting for well drilling. 397 F.3d at 303 (citing La. Op. Att'y Gen. 82-1021 and 89-416.)

7

ordinance provides that drilling within the 5,000 feet area may not proceed unless Shreveport's Director of Water and Sewerage has found that all requirements of the ordinance are met. The ordinance then lists thirteen requirements (e.g., site diagrams, spill prevention plans, proof of insurance) that must accompany an application for approval. Such requirements are analogous to the road permitting requirements found invalid by Louisiana courts and the AG opinion.

The prior panel also examined Louisiana Revised Statute section 30:28(F), the provision which grants exclusive authority to the LOC to regulate drilling in Louisiana. The panel found one passage from the statute particularly significant:

> [The statute] provides that "[n]o other agency or *political subdivision* of the state shall have the authority, and they are hereby *expressly forbidden*, to prohibit or in any way interfere with the drilling of a well or test well in search of minerals by the holder of such permit."

*Energy Mgmt. I*, 397 F.3d at 304 (quoting La. Rev. Stat. § 30:28(F) (2005)). This language compelled the panel to conclude that it was "clear" that the "process of regulating when and where an oil and gas well may be drilled" is entirely vested in the LOC. *Id*. Finally, the panel noted that "the statute gives the Commissioner [of the LOC] authority to issue regulations and orders to 'ensure ground water aquifer safety,' which is the same concern motivating the adoption of Ordinance 221." *Id*.

The holding of the prior opinion is clear, in fact, the prior panel leads off by unequivocally stating in the introductory paragraph, "[We] find that Ordinance 221 is preempted by Louisiana's comprehensive regulation of oil and gas drilling." Perhaps, as counsel for Shreveport argued, the ambiguity in this case lies in the concluding paragraph of the opinion. There, the court stated that the ordinance is "preempted by state law *and* is invalid to the extent that it purports to prohibit the drilling of oil and gas wells in an area within the state of Louisiana." *Energy Mgmt. I*, 397 F.3d at

8

305 (emphasis added). We agree that this language (i.e., "invalid to the extent that . . ."), when read out of context and not in conjunction with the entire opinion, is seemingly limiting; as we have explained, however, we do not agree that it was intended by the prior panel to be construed as such.

Therefore, we find the following three aspects of *Energy Management I* instructive and supportive of our conclusion that Ordinance 221 is preempted in its entirety: (1) the express language of *Energy Management I* does not suggest the ordinance was intended to be invalid only to the limited extent urged by Shreveport; (2) the cases and the AG opinions on which the prior panel relied relate to more than drilling and therefore suggest to us that *Energy Management I* addressed aspects of the ordinance beyond drilling prohibition in the 1,000 feet zone, contrary to Shreveport's argument; (3) La. Rev. Stat. section 30:28(F) provides that local political subdivisions are expressly forbidden to "*in any way* interfere with the drilling of a well." Accordingly, we hold the prior panel opinion held that Ordinance 221 is entirely preempted by state law.

B.  The District Court's Determination regarding Damages

1.  Standard of Review

We review legal conclusions underlying an award of damages de novo. *Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 552 (5th Cir. 2005). "If the district court committed no legal error, we review its factual findings for clear error." *Id*.

2.  Analysis

The district court declined to award damages on the basis that the oil and gas underlying the 1,000 feet zone is not "lost." In dismissing EMC's damages claim, the district court cited the rule of capture, which governs the ownership rights of landowners over the natural resources underlying

9

their land. *See* La. Rev. Stat. § 31:6. Under the rule of capture, "[o]wnership of land does not include ownership of oil [and] gas. . . . The landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership." *Id.* It is indisputable that this is the law in Louisiana, but EMC urges that there are other avenues for recovery for a mineral lease owner who has lost the ability to enjoy his lease rights.

EMC claims that the rule of capture is inapplicable to this case, and that it is entitled to damages under state law and/or 42 U.S.C. § 1983. EMC explains it established by a preponderance of uncontroverted evidence at trial that the value of lost production from two specific units[8] was $9,817,000.000. Furthermore, EMC argues that the district court's reasoning is without merit because EMC lost its mineral leases and, along with that, its ownership rights in the leases and minerals, specifically as a result of Shreveport's enforcement of Ordinance 221. EMC, however, has not clearly explained to us its underlying cause of action–specifically, how it overcomes the hurdle of its state law takings claim being prescribed.[9] EMC states that § 1983 extends protection to all rights guaranteed by the Fourteenth Amendment and that it provides an independent federal remedy

---

[8]EMC stated in its brief that though its losses included thousands of acres of mineral interests, it limited its claims for damages to the losses included in only two particular units, the "HOSS RC SUA" and "HOSS RC SUB" Units.

[9]EMC also fails to address whether its federal claim is time-barred. *See Drury v. U.S. Army Corps. of Eng'rs*, 359 F.3d 366, 367 n.1 (5th Cir. 2004) ("If [the appellant's] state claim is time-barred, his federal claim is also time-barred.") (citing *Braden v. Tex. A&M Univ. Sys.*, 636 F.2d 90, 92 (5th Cir. 1981), for the proposition that "[s]ection 1983 has no statute of limitations period, thus federal courts apply the state prescription statute governing the most analogous cause of action."); s*ee also Liberty Mut. Ins. Co. v. Brown,* 380 F.3d 793, 799 (5th Cir. 2004) (finding that the three year prescriptive period for an inverse condemnation action in Louisiana had expired, and, therefore, the appellant's takings claim was prevented from ever ripening, and the federal court lacked jurisdiction to consider the takings claim).

10

regardless of the availability of an adequate remedy under state law. EMC does not offer further explanation regarding the nature of its § 1983 claim except to state that the takings claim is an alternative claim "in case the ordinance was found valid." Notwithstanding EMC's argument, the record reflects that the *Energy Management I* panel held that EMC's takings claim was prescribed.[10] Therefore, EMC's takings claim is without merit.

As another potential damage recovery avenue, EMC briefly turns from state law to federal law, alleging that Shreveport violated its due process rights under the Fourteenth Amendment, "in that the ordinance is arbitrary and unreasonable and that the means employed by the ordinance lack a real and substantial relation to the goal Shreveport seeks to achieve."[11] The essence of EMC's argument is to urge a substantive due process claim under § 1983. Even though the prior panel made

---

[10]EMC devoted a substantial portion of its damages discussion in its brief and at oral argument to this issue as a potential means of recovery. It explains that "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." La. Const. art. 1, § 4, cl. B. Furthermore, it points out that Louisiana Revised Statute 13:5111 provides for attorney's fees and other relief in a successful takings claim.

Relief, however, is not available if the takings claim has prescribed; "[a]ctions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking." La. Rev. Stat. § 13:5111 (2005). In this case, Shreveport enacted Ordinance 221 in 1990; the earliest date evidencing action in this lawsuit is December 12, 1997, when EMC paid its filing fee. This is well beyond the statutorily provided prescription period. EMC begs to differ and relies on *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 546 (5th Cir. 2000), and *Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649 (5th Cir. 1989), as support for its position that its takings claim is not prescribed. These cases, however, are inapplicable to the instant appeal; both were brought within the required statute of limitations or prescriptive period. Accordingly, it is clear to us that EMC has no takings cause of action under state law because, as the *Energy Management I* panel concluded, its claim is subject to the Louisiana law of prescription, and the record reflects that its claim has prescribed.

[11]EMC quotes from the district court's Memorandum Ruling, dated June 13, 2003.

11

no mention of any § 1983 claim, we will analyze whether EMC should be awarded damages for a substantive due process violation under § 1983.[12]

Section 1983 provides a civil remedy in federal court for violations, under color of state law, of the rights, privileges and immunities secured by the Constitution and laws of the United States. *Findeisen v. N. E. Indep. Sch. Dist.*, 749 F.2d 234, 236-37 (5th Cir. 1984). Section 1983 extends protection to all rights guaranteed by the Fourteenth Amendment, including substantive due process. *Id.* at 237. In determining whether EMC has alleged a substantive due process violation, this court reviews Shreveport's actions "against the deferential 'rational basis' test that governs substantive due process." *Simi Inv. Co. v. Harris County, Tex.*, 236 F.3d 240, 249 (5th Cir. 2000). In the initial step of this analysis, EMC must demonstrate that it has a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies. *Simi*, 236 F.3d at 249–50. Even though EMC did not fully develop its § 1983 claim via its brief or during oral argument before this panel, we are safe to assume that EMC does have such a right, because the prior panel found that EMC had a "legally protected property right" to "exploit its mineral interests." *Energy Mgmt. I*, 397 F.3d at 302. Therefore, the next step in the substantive due process inquiry is whether the action is rationally related to a legitimate government interest. *Simi*, 236 F.3d at 250–51 . (citing *FM Props. Operating Co. v. City of Austin,* 93 F.3d 167, 174 (5th Cir. 1988)). This court has said that "[t]he

---

[12]EMC claims in its brief that the ordinance is "arbitrary"; a "substantive due process claim based on an allegedly arbitrary and unlawful attempt to interfere with private property rights suggests that this claim is one of substantive due process." *Simi Inv. Co. v. Harris County, Tex.*, 236 F.3d 240, 249 (5th Cir. 2000). On the other hand, with a procedural due process claim, EMC would have to show that the process provided by the state of Louisiana was inadequate and did not secure EMC's liberty interests. *See Wilkinson v. Austin*, 125 S. Ct. 2384, 2395-96 (2005). EMC has made no such showing. We note, however, that we are analyzing this substantive due process claim out of an abundance of caution, as EMC only mentions a possible due process claim in a footnote.

question is only whether a rational relationship exists between the [policy] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." *Simi*, 236 F.3d at 250-51 (citing *FM Props. Operating Co.*, 93 F.3d at 175 (alteration in original)).

Our analysis reveals that the enactment of Ordinance 221 was rationally related to Shreveport's interest in protecting its water supply. The state of Louisiana gave Shreveport the authority in Act 31 of 1910 to adopt ordinances to protect its water supply; further, the preamble to Ordinance 221 specifically states that Shreveport is empowered to protect its water and that the intent of the ordinance is to do so. *See Energy Mgmt. I*, 397 F.3d at 302. The fact that the ordinance is deemed preempted by state law does not convert Shreveport's actions into a violation of EMC's due process rights. *FM Props. Operating Co.*, 93 F.3d at 174.

We hold the district court did not err in denying the award of damages to EMC upon either ground contended in its brief. Though the district court relied on the rule of capture as support for this determination, we conclude that the overriding reason the denial of damages is proper is because EMC's takings claim is time-barred and its due process claim fails on the merits; neither state nor federal law provide a present path for recovery. Finding no basis to award damages to EMC, we do not entertain EMC's pre-and post-judgment interest request.

C. The District Court's Determination Regarding Awarding Attorney's Fees

1. Standard of Review

The district court has broad discretion to award attorney's fees, and an appellate court has only a limited opportunity to "appreciate the complexity of trying any given case and the level of professional skill needed to prosecute it." *Hopwood v.Texas*, 236 F.3d 256, 277 (5th Cir. 2000).

Accordingly, we review the factual findings supporting a district court's grant or denial of attorney's fees for clear error and the conclusions of law underlying the award are reviewed de novo. *Volk*, 262 F.3d at 534; *see also CenterPoint Energy Houston Elec. LLC v. Harris County Toll Road Auth.*, 436 F.3d 541 n.17 (5th Cir. 2006).

2. Analysis

The district court did not explain why it refused to award attorney's fees to EMC. EMC claims that it is entitled to attorney's fee under 42 U.S.C. § 1988. Section 1988 governs attorney's fees awards in § 1983 suits and states that "[i]n any action or proceeding to enforce a provision of [§ 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). This court has noted that, to be deemed a "prevailing party," "at a minimum, a plaintiff must receive 'some relief on the merits of his claim.'" *Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 249 (5th Cir. 2002) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)). Furthermore, this court has determined that for a party to qualify as a prevailing party it must (1) "obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Walker*, 313 F.3d at 249 (citing *Farrar v. Hobby*, 506 U.S. 103, 111–12(1992)).

We find unpersuasive EMC's reasoning that if we find Ordinance 221 preempted, then EMC must be the "prevailing party" for purposes of § 1988 and is deserving of attorney's fees. As we previously stated, EMC has not successfully proven its damages claim; its takings claim is time-barred and its § 1983 due process claim fails on the merits. EMC, therefore, does not pass the threshold outlined in *Walker*, as we interpret the threshold "relief" in this case to be the award of damages

14

rather than the determination that Ordinance 221 is entirely preempted by state law. Therefore, attorney's fees are not warranted under § 1988, as urged by EMC, because EMC is not a prevailing party as it pertains to the issue of damages.

Nonetheless, EMC directs this court to *Williams v. Hanover Housing Authority*, 113 F.3d 1294, 1297–98 (1st Cir. 1997), for the proposition that an award of attorney's fees under § 1988 is possible even when a party prevails under state law rather than on federal grounds. EMC misconstrues the impact of this case on its situation. It is true that the significance of the First Circuit's decision in *Williams* was that attorney's fees were possible under § 1988 when the party has prevailed on state, though not federal grounds, on an alleged constitutional violation. *Id*. at 1297. EMC, however, has not prevailed on its damages claim on state *or* federal grounds; thus, *Williams* is not applicable. A plain reading of both *Williams* and *Walker* explains that without *any* recovery, attorney's fees are out of EMC's reach. Therefore, even though EMC has prevailed based on this court's holding that *Energy Management I* determined that Ordinance 221 is entirely preempted by state law, this ruling is separate and apart from its claim for damages based on state law, its claim for damages based on federal law, its subsequent § 1988 claim to recover attorney's fees, and its request for cost. Accordingly, we hold that the district court did not err in refusing to award attorney's fees.

4. The District Court's Determination Regarding Awarding Costs

1. Standard of Review

A district court has wide discretion whether to award costs to the prevailing party. *Brazos Valley Coal. of Life, Inc. v. City of Bryan, Tex.*, 421 F.3d 314, 327 (5th Cir. 2005); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 686 (5th Cir. 2001). The court, however, recognizes a "strong presumption" that the district court will likely do so. *Salley v. E.I. DuPont de Nemours & Co.*, 966

F.2d 1011, 1017 (5th Cir. 1992). "We review for abuse of discretion, but if the court does not award costs to the prevailing party, we require the district court to state its reasons." *Id*.

2. Analysis

The district court in this case did not award costs to EMC and it did not state its reasons; in fact, the court did not even mention costs in its judgment. EMC argues that it is the "prevailing party" under 42 U.S.C. § 1988 and, therefore, Federal Rule of Civil Procedure 54 provides that it is entitled to costs. *See* Fed. R. Civ. P. 54(d) ("[C]osts other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs"). Furthermore, EMC points out that it was awarded costs in its prior appeal, as evidence that it should again be deemed as the prevailing party for purposes of this issue. As we explained earlier, EMC is not a prevailing party for purposes of § 1988 and did not prevail on its damages claim under § 1983 or on state law grounds. EMC has, however, prevailed on the declaratory judgment language issue, as this opinion mandates that, on remand, the district court's declaratory judgment language mirror the intent of the *Energy Management I* opinion. Accordingly, we remand the issue of allocation of costs to the district court for further consideration; the district court may exercise its discretion to grant or deny costs–with stated reasons.

### III. CONCLUSION

Quoting the language of the *Energy Management I* panel, "[i]n summary, we conclude that the City of Shreveport's Ordinance 221 is preempted by state law." 397 F.3d at 306. Accordingly, we VACATE the district court's declaratory judgment and REMAND this case for entry of declaratory judgment language in accordance with the prior panel's expressed intent that Ordinance 221 be preempted in its entirety. Furthermore, we AFFIRM the district court's refusal to award

16

damages and attorney's fees and REMAND the issue of allocation of costs to the district court for

further relief to which EMC may be entitled.