IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 5, 2007**

Charles R. Fulbruge III
Clerk

No. 06-31097

MUNIBUDDIN YOUSUF; YOUSUF INC, doing business as Read Road Shell

Plaintiffs-Appellants

v.

MOTIVA ENTERPRISES LLC

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
USDC No. 2:04-CV-2787

Before KING, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-appellants Munibuddin Yousuf and Yousuf, Inc. (collectively "Yousuf") leased and operated a Shell service station in New Orleans from 1992 to 2005 pursuant to franchise contracts with defendant-appellee Motiva Enterprises, L.L.C. ("Motiva").[1] In September 2004, Motiva notified Yousuf that it was terminating their franchise relationship effective December 15, 2004 because of Yousuf's alleged failure to meet Motiva's image standards during

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Motiva is a joint venture of Shell Oil Company and Saudi Refining, Inc.

recent inspections of the service station. Yousuf filed suit against Motiva in October 2004, challenging the termination under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801-2841, and state law causes of action. Yousuf promptly filed a motion for a temporary restraining order ("TRO") and a preliminary injunction in accordance with § 2805 of the PMPA, which provides for such relief within a 90-day period after the franchiser gives formal notification of termination or nonrenewal.

At the TRO conference on November 22, 2004, the parties announced that they had executed a "Stipulated Standstill Agreement" (the "standstill agreement") under which the parties extended their franchise agreements "to maintain the status quo in order to permit Plaintiffs to continue to occupy and conduct business at the Service Station Property . . . pending the district court's ruling on the preliminary injunction." The district court adopted the agreement as an order of the court. As discovery progressed, the parties reached another agreement, and on December 22, 2004 they filed a joint stipulation and motion for the entry of a consent judgment on Yousuf's preliminary injunction motion. In accordance with the stipulation and motion, the district court issued a preliminary injunction ordering that the franchise agreements continue in force until judgment is rendered on Yousuf's claim for a permanent injunction and reflecting that "on motion of the parties, the Court ma[de] no findings of fact or conclusions of law pursuant to F.R.C.P. Rule 52 in connection with plaintiffs' motion for preliminary injunction, such findings and conclusions being waived by the parties and deferred until the Court enters judgment on plaintiffs' claim for permanent injunction."

Before a jury could hear Yousuf's case, however, Hurricane Katrina effectively destroyed the station. Recognizing that further litigation over the September 2004 termination was now purposeless, Motiva rescinded its notice of termination in November 2005 and eventually terminated Yousuf's franchise

under the premises-destruction provisions of the PMPA, 15 U.S.C. § 2802(c)(7), and the franchise agreements. Yousuf moved to dismiss all of his substantive claims as moot and, based on his "success in obtaining the standstill agreement and later the preliminary injunction, and Motiva's subsequent rescission of the termination,"[2] sought attorney's fees and costs under 15 U.S.C. § 2805(d). The district court denied the motion for attorney's fees and costs and granted the motion to dismiss the remaining claims. Yousuf appeals.[3]

Section 2805(d)(1) of the PMPA contains a fee-shifting provision specifying that a franchisee who prevails in an action brought under § 2805(a) may be entitled to reasonable attorney's fees. Although the PMPA does not define "prevailing party," we are guided by the extensive case law interpreting that concept, which appears in a number of statutes. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't Health & Human Res., 532 U.S. 598, 603 n.4 (2001). Our court has held that "to be deemed a 'prevailing party,' at a minimum, a plaintiff must receive some relief on the merits of his claim." Energy Mgmt. Corp. v. City of Shreveport, 467 F.3d 471, 482 (5th Cir. 2006) (citing Walker v. City of Mesquite, 313 F.3d 246, 249 (5th Cir. 2002)) (some internal quotation marks omitted); see also Buckhannon, 532 U.S. at 603. In addition, we have "determined that for a party to qualify as a prevailing party it must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." Energy Mgmt., 467 F.3d at 482 (citing Walker, 313

---

[2] Yousuf clarifies in his reply brief that Motiva's "unilateral act of purportedly withdrawing the termination notice three months after Hurricane Katrina . . . is not the basis for [Yousuf's] entitlement to fee award. The preliminary injunction is."

[3] "[T]he characterization of prevailing-party status for awards under fee-shifting statutes . . . is a legal question subject to de novo review." Bailey v. Mississippi, 407 F.3d 684, 687 (5th Cir. 2005).

F.3d at 249) (internal quotation marks omitted). The Supreme Court has also rejected the "catalyst theory" previously applied by many circuits, making clear that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change" to establish prevailing party status. Buckhannon, 532 U.S. at 605.

In Planned Parenthood of Houston & Southeast Texas v. Sanchez, a case in which providers of family planning and abortion services obtained a preliminary injunction against the impending enforcement of a Texas statute that prohibited state distribution of federal family planning funds to elective-abortion providers, we recently examined the approaches taken by other circuits in identifying the circumstances, if any, under which a preliminary injunction may support an award of attorney's fees. 480 F.3d 734, 740 (5th Cir. 2007). As we discussed, several circuits have determined that a preliminary injunction that merely preserves the status quo temporarily will not confer "prevailing party" status on a party; instead, the preliminary injunction must (i) reflect a merits-based decision on an issue involved in the case, see, e.g., John T. v. Del. County Intermediate Unit, 318 F.3d 545, 558-59 (3d Cir. 2003); Dubuc v. Green Oak Twp., 312 F.3d 736, 753 (6th Cir. 2002); Taylor v. City of Fort Lauderdale, 810 F.2d 1551, 1558 (11th Cir. 1987)[4]; (ii) constitute substantive, indefeasible relief akin to final relief on the merits because, for example, "the party's claim [for a] permanent injunction is rendered moot by the impact of the preliminary

---

[4] As we noted in Planned Parenthood, 480 F.3d at 740 n.2, Taylor is a pre-Buckhannon case, but the Eleventh Circuit reaffirmed its holdings in Wyner v. Struhs, 179 Fed. Appx. 566, 568 (11th Cir. 2006), rev'd on other grounds, Sole v. Wyner, 127 S. Ct. 2188 (2007). Though the Supreme Court reversed Wyner v. Struhs, it did so because the party that obtained the preliminary injunction ultimately lost on the merits as the case developed. Sole, 127 S. Ct. at 2196. The Court "express[ed] no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." Id.

4

injunction," N. Cheyenne Tribe v. Jackson, 433 F.3d 1083, 1086 (8th Cir. 2006); see also, e.g., Dupuy v. Samuels, 423 F.3d 714, 719, 723 (7th Cir. 2005); (iii) grant the party concrete and irreversible relief in a merits-based decision that vindicates the party's claim and is not appealed by the opposing party, see, e.g., Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 947-48 (D.C. Cir. 2005); or (iv) incorporate some combination of these factors.[5] See Planned Parenthood, 480 F.3d at 740-41. We also noted that "[t]he Ninth Circuit has . . . taken a relatively generous approach, at least in principle, stating that a 'preliminary injunction issued by a judge carries all the "judicial imprimatur" necessary to satisfy Buckhannon,'" but that the circuit has recognized an exception where "the plaintiff scores an early victory by securing a preliminary injunction, then loses on the merits as the case plays out." Id. at 741 (quoting Watson v. County of Riverside, 300 F.3d 1092, 1096 (9th Cir. 2002)). The Supreme Court recently applied this exception to deny prevailing party status without addressing when, if ever, success in gaining a preliminary injunction may serve to create a prevailing party. See Sole v. Wyner, 127 S. Ct. 2188, 2196 (2007). Finally, the Fourth Circuit has indicated that a preliminary injunction might never serve as the basis for prevailing party status, explaining that "the merits inquiry in the preliminary injunction context is necessarily abbreviated" and is balanced with other considerations, such as the likelihood of irreparable harm. Smyth v. Rivero, 282 F.3d 268, 276 (4th Cir. 2002).

In Planned Parenthood, we had no need to choose among these approaches because the preliminary injunction issued in that case failed to confer prevailing party status on the plaintiffs under any approach. 480 F.3d at 741. We similarly have no need to choose among these approaches here. Neither the

---

[5] We do not address whether the cited circuits fall into more than one of these categories.

preliminary injunction nor the court-ordered standstill agreement (which effectively functioned as a temporary restraining order) did anything more than temporarily preserve the status quo, maintaining the parties' preexisting franchise relationship until the legal issues surrounding the approaching termination of that relationship could be addressed on the merits. Cf. Dersch Energies, Inc. v. Shell Oil Co., 314 F.3d 846, 862-63 (7th Cir. 2002) (characterizing PMPA injunctive relief, sought by a plaintiff to forestall the impending termination of his franchise, as the district court's remedy "to preserve the status quo between the parties during the pendency of the litigation (i.e., the existing terms of the franchise relationship)"). While Yousuf argues that the orders did more than preserve the status quo by delaying the contract termination date set by Motiva, Planned Parenthood held in a comparable situation that a preliminary injunction delaying the enforcement of a state law, "thereby maintaining the flow of federal funds to Plaintiffs," merely preserved the status quo. 480 F.3d at 741. Moreover, this is not a situation in which a court order substantially achieves a litigation goal and is thus akin to final relief. Although Yousuf's claims became moot after the grant of the preliminary injunction, the reason they were moot was not because the court orders were so successful for Yousuf that they rendered any further relief unnecessary, but rather because of the unrelated impact of Hurricane Katrina, which eliminated any hope that Yousuf would be able to keep the franchise contracts in effect.

We recognize that Motiva did not appeal the orders and that the orders bore the district court's imprimatur. However, even the broadest circuit court approach incorporates the Supreme Court's requirement that a prevailing party "succeed[] on any significant issue in litigation which achieve[s] some of the benefit [he] sought in bringing suit," Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92 (1989) (internal quotation marks omitted), thereby "receiv[ing] at least some relief on the merits of his claim," Buckhannon,

532 U.S. at 603-04 (internal quotation marks omitted). See, e.g., Carbonell v. INS, 429 F.3d 894, 900 & n.5 (9th Cir. 2005). As noted earlier, our circuit also requires that, at a minimum, a party must obtain some relief on the merits of his claim to be considered a prevailing party. See Energy Mgmt., 467 F.3d at 482. Here, the district court did not engage in any consideration of the merits of Yousuf's claim, even to a minimal degree[6]; to the contrary, the district court explicitly disclaimed that it made any findings of fact or conclusions of law in its order granting the preliminary injunction, as the parties agreed to the order and "waived . . . and deferred" all merits analysis until the entry of judgment on Yousuf's claim for a permanent injunction. The standstill agreement does not reflect any merits consideration by the district court either, but instead merely "maintain[ed] the status quo . . . pending the district court's ruling on the preliminary injunction."

Our conclusion is also not altered by the fact that both parties consented to the agreements underlying the court orders. As Yousuf points out, the Supreme Court has determined that a "settlement agreement[] enforced through a consent decree" may be sufficient to entitle a party to attorney's fees. See Buckhannon, 532 U.S. at 604. But in such a situation, the decree substitutes for formal relief on the merits, essentially vindicating the merits of the party's claims by achieving some of the benefit he sought to obtain on the merits before the court. Cf. Maher v. Gagne, 448 U.S. 122, 129 (1980) (approving the use of settlement agreements as the basis for awards of attorney's fees while relying, in part, on a Senate Report's statement that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief" (citing

---

[6] In Watson, by contrast, the Ninth Circuit noted that the district court "analyz[ed] the merits of Watson's claim" before granting the preliminary injunction at issue. 300 F.3d at 1094.

S. REP. NO. 94-1011, at 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5912)). Even assuming, arguendo, that a court-adopted agreement between opposing parties may substitute for a typical preliminary injunction to support prevailing party status, the orders to which the parties consented here were issued in place of a court-crafted preliminary injunction that would have been granted on a diminished analysis of the merits. "The PMPA sets a more indulgent standard for relief than does the traditional Rule 65 preliminary injunction," in that it requires neither a showing of irreparable injury nor a substantial likelihood of success on the merits. Bridges Enters., Inc. v. Exxon Co., U.S.A., 820 F.2d 123, 124 (5th Cir. 1987); 15 U.S.C. § 2805(b)(2). Instead, the franchisee may obtain a preliminary injunction by showing that "(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation," as long as the court determines that the balance of hardships favors the franchisee. 15 U.S.C. § 2805(b)(2). Some courts have restated the second prong as requiring the franchisee to show "a reasonable chance of success on the merits," see, e.g., Beachler v. Amoco Oil Co., 112 F.3d 902, 905 (7th Cir. 1997), while other courts appear to have interpreted the provision more literally, looking to the seriousness of the questions raised by the franchisee, see, e.g., Ewing v. Amoco Oil Co., 823 F.2d 1432, 1436 (10th Cir. 1987). Regardless of the interpretation, we conclude that Motiva's consent to forgo this undeniably lenient inquiry, through orders that resolved no merits-based issues but instead "waived . . . and deferred" any court findings of fact and conclusions of law until entry of judgment on Yousuf's claim for a permanent injunction, did not serve to vindicate Yousuf's claims on the merits or otherwise serve as an adequate

substitute for formal, merits-based relief such that Yousuf is entitled to attorney's fees.[7]

     For the foregoing reasons, we AFFIRM.

---

[7] Ketterle v. B.P. Oil, Inc., 909 F.2d 425 (11th Cir. 1990), in which the Eleventh Circuit found that a plaintiff was entitled to attorney's fees based on a PMPA preliminary injunction, is not to the contrary. Though the defendant in Ketterle argued that the lax PMPA standard for a preliminary injunction does not relate to the merits of the action, the court did not address the argument, looking only at whether the PMPA standard required a "colorable claim." Id. at 430. Under the precedent followed by the court, a plaintiff bringing a "colorable claim" could be entitled to attorney's fees "if the defendant simply complie[d] with the plaintiff's demands and moot[ed] the case for reasons that ha[d] nothing to do with the potential merit of the suit." Dunn v. Fla. Bar, 889 F.2d 1010, 1015 (11th Cir. 1989) (quoting Hennigan v. Ouachita Parish Sch. Bd., 749 F.2d 1148, 1153 (5th Cir. 1985)). In this case, unlike Ketterle, Motiva did not comply with Yousuf's demands after the preliminary injunction issued; instead, the case was mooted by an unrelated event that allowed Motiva to terminate the parties' contracts on another ground. Moreover, Ketterle was a pre-Buckhannon case that appears to have applied the "catalyst theory" rejected in Buckhannon. See Buckhannon, 532 U.S. at 605.